Climesto J. COLEY, Plaintiff,

v.

SECRETARY OF the ARMY,
Defendant.

Civ. No. JH–85–4218.

United States District Court,
D. Maryland.

Oct. 1, 1987.

Sheldon I. Cohen, Arlington, Va., for plaintiff.

Breckinridge L. Willcox, U.S. Atty., and Gary P. Jordan, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM OPINION

JOSEPH C. HOWARD, District Judge.

This is an action under Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791 and 794; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5 and 2000e–16, regulations of the Equal Employment Opportunity Commission ("EEOC") issued thereunder; regulations of the Department of the Army, and civil service laws and regulations.

Jurisdiction of this Court is based on 5 U.S.C. § 7703(b)(2), 28 U.S.C. §§ 1331 and 1343(a)(4), 29 U.S.C. § 794a, 42 U.S.C. §§ 2000e–5(f)(3) and 2000e–16.

Plaintiff, Climesto J. Coley, brought this action alleging discrimination due to physical disabilities concerning his employment with the United States Army. Specifically, plaintiff alleges that the defendant failed to reassign him after his back and hip problems incapacitated him from performing the duties of a warehouse worker. The case was tried by the Court on September 22, 1986, and the parties submitted proposed findings of fact and conclusions of law on September 29, 1986.[1]

## BACKGROUND

Plaintiff was employed as a civilian employee by defendant at the United States Army, Aberdeen Proving Ground, Aberdeen, Maryland. Plaintiff's place of employment was the U.S. Army Commissary. He was employed in a permanent part-time position as a warehouse worker and satisfactorily performed the duties of his position through November 19, 1980.

Due to a physical disability involving a chronic back problem and other disabilities, in December 1980 plaintiff went on leave without pay pending action on his application for disability retirement. His disability retirement was subsequently approved by the U.S. Office of Personnel Management ("OPM") on July 8, 1981 and plaintiff was removed from the rolls of active employment.

Thereafter, OPM recomputed the time creditable towards plaintiff's retirement and determined that plaintiff lacked the requisite five years of creditable civilian service. On February 1, 1982, OPM ordered that plaintiff be reinstated to active civilian employment.

Upon being notified by the Army of his reinstatement, plaintiff reported back for duty on February 17, 1982, and was placed on leave-without-pay until his employment was terminated by defendant effective September 17, 1982. At the time of his dismissal, plaintiff's wage grade was WG–5.

After plaintiff's removal, he filed a timely appeal with the U.S. Merit Systems Protection Board ("MSPB"). A hearing was held by the Board on June 8 and 9, 1983. On July 29, 1983, the MSPB, Philadelphia Regional Office, ruled that plaintiff was a qualified handicapped employee and that defendant had improperly failed to offer plaintiff one of the permanent positions which were available and for which he was qualified. The defendant was ordered to cancel the removal action. It appealed the decision to the MSPB headquarters which, on September 16, 1985, reversed the Philadelphia Regional Office decision, and affirmed the removal 29 MSPR 101. Plaintiff has exhausted his administrative remedies.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### (A)

■ To prevail in a claim that he was discriminated against because of a physical handicap, plaintiff must first prove that he is a handicapped person under the Act. A handicapped person is one who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 29 U.S.C. § 706(7)(B). "Major life activities" is defined in 29 C.F.R. 1613.702(c) as functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

In the case at bar, the testimony and documentary evidence indicate that plaintiff was retired from his position as warehouse worker due to a physical disability of osteoarthritis in his left hip which resulted from an injury which he received on active duty in the military. (Exhibit 42). In June 1981, prior to his retirement, his medical report limited him to not lifting or carrying

---

1. As the parties have been most thorough in their respective proposed findings of fact and conclusions of law, and have stipulated to a large segment of the facts, the Court will utilize significant portions of these submissions in articulating its ruling.

over fifteen pounds, and not ·working in excessive cold and dampness. (Exhibit 43). The Army's medical report of June 1982 similarly was that plaintiff "most avoid doing manual labor—is able to perform light duty only with no lifting over fifteen pounds—should not be exposed outside to inclement weather. Should not work on slippery surfaces." It was not only the unique requirements of the job as warehouse worker which were affected by plaintiff's physical handicap, but all jobs of manual labor.

Accordingly, the Court finds that plaintiff's physical handicap was a significant barrier to his employment. He was disqualified from all jobs requiring any degree of manual labor, he could not work at all in the field in which he had substantial training and experience, as a cook, and could not do any jobs which required long periods of standing or walking. The Court finds that plaintiff's physical disability was a substantial limitation on his ability to work. The facts of this case are significantly different from the facts in *Forrisi v. Bowen*, 794 F.2d 931 (4th Cir.1986), in which the plaintiff in that case was foreclosed, due to his fear of heights, from only doing one particular job in one particular location. In the case at bar, the plaintiff was foreclosed from doing any type of manual labor or from any job in inclement weather or excessive dampness or cold, and particularly from following the work for which he had so much experience and training, that of a cook. The Court, therefore, finds that plaintiff was a "handicapped person" as defined by the EEOC regulations because he had a physical impairment which substantially limits one of his major life's activities, *i.e.*, working.

### (B)

In analyzing claims brought by federal employees under the Rehabilitation Act, commentators and courts have identified four potential theories of recovery: (1) intentional discrimination for reasons of social bias against the handicapped; (2) neutral standards with disparate impact; (3) surmountable impairment barriers; and (4) insurmountable impairment barriers.

*Prewitt v. USPS,* 662 F.2d 292, 305 n. 19 (5th Cir.1981). The instant plaintiff has attempted to prove a case of surmountable impairment barriers, *i.e.,* that the defendant failed to provide a reasonable accommodation for him.

An analysis of plaintiff's claim that he was not provided reasonable accommodation begins with the defendant's duty, set out in 29 C.F.R. 1613.701:

> Agencies shall give full consideration to the hiring, placement, and advancement of qualified mentally and physically handicapped persons. The federal government shall become a model employer of handicapped individuals. An agency shall not discriminate against a *qualified* physically or mentally handicapped person. (emphasis added).

The defendant's duty only accrues to plaintiff if he is a qualified handicapped person, defined in 29 C.F.R. 1613.702(f) as one who, with or without reasonable accommodation, can perform the essential functions of the position in question. In the instant case, defendant maintains that the plaintiff is not a qualified handicapped person, and further, that even if he were, reasonable accommodation does not extend to considering him for any job he did not hold.

The proper interpretation of the phrase "position in question" and the consequential impact on plaintiff being characterized as a *qualified* handicapped person is the subject of a growing debate. There is a line of decisions, notably, *Carty v. Carlin,* 623 F.Supp. 1181 (D.C.Md.1985); *Dancy v. Kline & Davia,* No. 84–C–7369 [available on WESTLAW, 1986 WL 8027], Northern District of Illinois, July 11, 1986 (slip. op.); and *Carter v. Tisch,* 822 F.2d 465 (4th Cir.1987), United States Court of Appeals, which interpret "position in question" to refer to only a singular job involved in the lawsuit. In *Dancy,* Judge Leinenweber articulated his interpretation as follows:

> the language of the regulation suggests that the phrase "position in question" refers to the position which is the subject of the lawsuit, or "in question". The inquiry under the regulation should be whether with reasonable accommodation

a plaintiff can do the position to which he was denied as a result of an adverse employment decision. For example, if the case involves a termination, the position in question would be the job from which the plaintiff was discharged. If the case involves a denial of promotion, the position in question would be the position to which the plaintiff sought to be promoted. If the case involves a refusal to hire, the position in question would be the position to which the plaintiff has applied. (Memorandum opinion, p. 5.)

The court further held that "reasonable accommodation" refers to making the job for which the handicapped person was hired accessible, not another job. Under these cases, the inquiry would be limited to plaintiff's position as a warehouse worker. Because plaintiff is unable to show that he was otherwise capable of performing that job, with or without accommodation, under the aforementioned cases, he fails to establish a *prima facie* case.

At the other end of the debate is the case of *Ignacio v. U.S. Postal Service*, 30 M.S. P.R. 471 (1986), in which a special panel certified by the MSPB held that reasonable accommodation included reassignment and, hence, *position in question* necessarily included all positions to which the handicapped person might be reassigned. Under this construction, the issue is whether Mr. Coley was otherwise qualified and able to perform in the various other positions available during the relevant time period.

Although *Ignacio* met criticism in *Dancy* and, to a lesser extent, in *Carter,* in the instant case the Court will adopt its interpretation. Unlike *Dancy* and *Carter,* this case involves a *clearly articulated* and *established policy* of reassigning handicapped persons. That policy is codified in Chapter 339, Subchapter 1 of the Federal Personnel Manual (FPM) which provides:

Sec. 1–3. Separation for Medical Unfitness

.     .     .     .     .

(b) ... In view, however, of the policy of the executive branch on utilization of employees who are handicapped or who develop handicaps (see subchapters 4 and 8 of chapter 306) every reasonable effort should be made to reassign the employee to duties he or she can perform efficiently and safely, or to take steps to protect the employee's rights under subchapter III of chapter 83, title 5, United States Code, before taking action to separate him or her for disability. Specifically, the following alternatives should be considered: ...

(2) Judicious reassignment to a position with less rigid physical requirements including job engineering when possible to utilize the remaining unimpaired assets of the handicapped employee.

(Plaintiff's Exhibit 81).

Chapter 752, Subchapter 3 of the FPM (Army Reg. 690–700) provides:

Sec. 3–2. Merit of the Adverse Action.

a. Cause.

(5) Physical Disability

(a) An employee may be separated for disability at any time. Action should not be initiated unless—

—The employee is unable to perform the duties of his or her position efficiently and safely because of disease or injury.

—Efforts to reassign the employee to a vacant position for which he or she qualifies at the same grade level in the commuting area prove unsuccessful.

—The employee declines to accept assignment to a vacant position at a lower grade for which he or she qualifies. . . .

(Plaintiff's Exhibit 78).

Furthermore, the Office of the Assistant Secretary of the Army for Manpower and Reserve Affairs has stated the Army's policy as follows:

a. Reassignment to a position in which a handicapped employee can perform successfully with or without reasonable accommodation can be an appropriate *and necessary* agency action as required by 29 C.F.R. § 1613.704.

b. Removal of a handicapped employee for reasons of inability to perform the duties of his (her) position without previous effort to reassign the employee can be a violation of the Rehabilitation Act,

and hence constitutes a prohibited personnel practice under 5 U.S.C. § 2302(b)(1).

c. As per the above, "position" or "position in question" as used in the EEOC regulations on handicap discrimination is not limited to the position occupied or held by the employee, but also includes any position the employee could have held as a result of reasonable accommodation.

d. The above interpretations are supported by the legislative history of the statute; the Commission's interpretation of its own regulations; the broad remedial nature of the underlying legislation, and the Office of Personnel Management's guidance on the subject. See *Handbook of Selective Placement* (OPM Doc. 125–11–3, March, 1979) and *Handbook of Reasonable Accommodation* (OPM 720–A, March, 1980).

e. In defending any failure to reassign a handicapped employee, the agency must show that such action would have created an undue hardship on its operations. The existence of a negotiated collective bargaining agreement preventing such reassignment is insufficient to show undue hardship inasmuch as any such provisions of the agreement is rendered unlawful and hence inoperative by the Rehabilitation Act. Thus the case of *TWA v. Hardison*, 432 U.S. 63 [97 S.Ct. 2264, 53 L.Ed.2d 113] (1977) is not to be applied to matters raised under the Rehabilitation Act.

The EEO Agency, OASA(MRA), has reviewed DA's policies and regulations in light of the *Ignacio* decision. The ruling is consistent with the Army's long-standing commitment to accommodate disabled employees as well as applicants. We draw your attention to the following:

a. DA Affirmative Action Program for Handicapped Individuals dated 5 January 1984, at page 5 specifically states, "Employees who become disabled due to personal or compensable injury, or illness, or who became medically disqualified for their current positions *should be placed in positions for which they are otherwise qualified.*"

b. AR 690–700, 752 (November 1981) at Section 3–2 states that an employee may not be separated for disability without, among other actions, "efforts to reassign the employee to a vacant position for which he or she qualifies at the same grade level in the commuting area . . ."

c. DA Disabled Veterans Affirmative Action Program (DVAAP) enshrines broad instructionary language consistent with the spirit and holding of the *Ignacio* decision.

d. A letter to each of your commanders from the EEO Agency, OASA(MRA), dated 5 June 1984 discussing EEOC decisions stressed that, "after an individual is employed and he or she becomes disabled, either through an accident on or off the job or illness, he or she is entitled to the same rights and protection under the law" (as would be an applicant for employment). (Emphasis added). Plaintiff's Exhibit 77. *See also* Exhibit 87 at p. 3. Finally, the defendant stipulated as follows:

> Department of the Army policy requires that before an employee may be separated for disability, efforts must be made to reassign the employee to a vacant position for which he qualifies at the same grade level in the commuting area. If such efforts prove unsuccessful or the employee declines to accept assignment to a vacant position at a lower grade for which he qualifies, then said employee may be separated.

Given the established duty to attempt reassignment of handicapped persons prior to termination, this Court's review of defendant's purported compliance necessarily entails consideration of the variety of positions for which plaintiff was allegedly qualified. Absent an interpretation consistent with *Ignacio*, defendant's duty to reassign in this case would be meaningless. The interpretation adopted by the Court today appears to comport with the rulings in *Carter* and *Marsh v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) *as qualified therein.* In *Marsh*, the Supreme Court provided:

**524**

Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she was doing, *they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies.*

*Id.* 107 S.Ct. at 1131 n. 19 (emphasis supplied). In construing this language in *Carter,* the Fourth Circuit stated:

Although dicta, such language suggests that an employer is not required to find alternative employment for an employee who cannot perform his job *unless the employer normally provides such alternative employment under its existing policies.* (emphasis supplied).

*Carter,* at 467.

Having adopted the interpretation of the position in question consistent with *Ignacio,* the Court must now determine whether plaintiff is a qualified handicapped person with respect to other positions available during the relevant time.

### (C)

■ Plaintiff presented an expert witness, Mr. Kent Fendler, who had thirty years of experience in federal personnel work prior to his retirement, culminating in his holding positions as Deputy Director of Personnel for the Department of Health, Education and Welfare and finally as Director of Personnel and Training for the Federal Highway Administration. Mr. Fendler testified that he had extensive experience in personnel staffing and position classification. He reviewed the documents made available to him from plaintiff's personnel and medical file and interviewed plaintiff concerning his education, experience and training.

Mr. Fendler testified that qualifications for positions are determined from office of personnel management qualification standards known as the X–118 manual, those stated on the particular position description in question, and any special requirements which an employing agency may use to supplement the X–118 manual. He further testified to having reviewed position descriptions and qualification statements for 150–200 positions that were vacant and advertised to be filled at Aberdeen Proving Ground between February and November 1982. He stated that he was provided with no special qualifications beyond those stated on the position description and the X–118 manual qualifications standards. Based upon his review of the positions and in view of Mr. Coley's training, education and experience as indicated in his personnel file and discussions, he found that plaintiff was fully qualified to perform thirty of the positions which were available. Those thirty positions between grades GS–1 and GS–6, including three sales-store checker positions, were stipulated as being available and advertised to be filled at Aberdeen Proving Ground between February and November 1982 (*See* Appendix I). Mr. Fendler's testimony regarding Mr. Coley's qualifications for those positions was unchallenged by the Army.

After reviewing the documents submitted and the testimony offered on this issue, the Court finds that plaintiff was qualified for the various positions set forth in Appendix I.

■ Defendant contends that because plaintiff's original position was as a permanent part-time employee, its duty to reassign was similarly limited to such positions. Having previously reviewed the panoply of policy directives dealing with reassignment, the Court is convinced that defendant's position is in error. The laws prohibiting discrimination are remedial in nature and as such ought to be liberally construed. Defendant's duty required that it review all other positions including full-time positions at plaintiff's grade or below prior to terminating him. Defendant, admittedly, did not consider plaintiff for full-time positions.

During trial, plaintiff testified that he repeatedly advised Mrs. Ruth Hash, the personnel specialist in defendant's personnel office in charge of the commissary, that he would take any job including sweeping the floor, part-time employment, or a reduction of pay. He said that he was repeatedly told by Mrs. Hash that there were

no jobs available. Plaintiff stated that he met with Mrs. Hash when he reported back for duty on February 17, 1982, and went back to the personnel office and spoke with her at least once a week between then and the time when he received his notice of termination in July 1982. He said that she never offered him a position of sales-store checker or any other position during that time. Plaintiff further testified that at that time he had five children, the youngest of whom was an infant, that his wife was not working, and that after about a month of being on leave-without-pay from the Army he went back to the job corps and unsuccessfully tried to get his old job back. He stated that his only source of income during this time was welfare and a small disability pension from the Veterans Administration.

Conversely, Mrs. Hash testified that plaintiff came to see her only twice between the time he was called back to employment on February 17, 1982 and when he received his notice of termination in July 1982. She testified the first time he came to see her was on February 17 and once again later in the spring. She stated that on neither of those visits did the plaintiff ask to go back to work, but said he only wanted to put in enough time to get back on disability retirement. Mrs. Hash further testified that the first time she saw plaintiff on February 17 she offered him the position of sales store check, but he said he did not want it. She further testified that she had spoken with the agency's handicapped coordinator, Patricia Adelhardt, about plaintiff on many occasions between February 1982 and July 1982.

Mrs. Patricia Adelhardt, the agency's handicapped coordinator, testified that the first time she spoke with Mrs. Hash about plaintiff was some time during the summer of 1982, after the Army's doctor had reexamined Mr. Coley in June 1982 and had determined that he was still physically unable to perform his job as warehouse worker. Mrs. Adelhardt further testified that she reviewed the agency's vacancy list only once, after August 10, 1982, when she received a request that she review any permanent part-time positions for which Mr. Coley might be qualified. (Exhibit 8).

The testimony of Mr. Coley and Mrs. Hash conflicts on whether he was offered and refused a position as sales-store checker upon his return in February 1982. In view of Mr. Coley's testimony of his dire financial condition and his family responsibilities and need to work, and particularly in view of the conflicting testimony between the Army's two witnesses, Mrs. Adelhardt and Mrs. Hash regarding Mrs. Hash's alleged numerous consultations with Mrs. Adelhardt about finding a job for Mr. Coley which Mrs. Adelhardt contradicted, I find plaintiff's testimony inherently more credible. I find that he did, in fact, return to the personnel office on a weekly basis in an attempt to find employment, and did speak with Mrs. Hash during those times between February and July 1982 and asked her for available jobs. I further find, resolving the conflicting testimony in plaintiff's favor, that at no time did Mrs. Hash offer plaintiff the position of sales-store checker or any other position after he returned in February 1982, although, in fact, between the time that plaintiff was called back to active duty and the time his employment was terminated there were numerous jobs for which he was qualified, which were being advertised and filled at Aberdeen Proving Ground.

Accordingly, the Court concludes that plaintiff has prevailed in proving his claim of discrimination.

### (D)

Plaintiff is entitled to be reinstated to his position as warehouse worker with back pay at the rate of GS–5, step 4 from February 17, 1982 to June 12, 1983, and at the rate of WG–5, step 5 from June 13, 1983 to the time of his reinstatement, and continuing until the agency appoints him to a position or he resigns or retires.

If plaintiff is still physically disqualified from performing the duties as warehouse worker, the agency shall look for and offer to plaintiff other permanent part-time or full-time positions in the commuting area of Aberdeen Proving Ground, Md. for

which plaintiff is eligible at grade WG–5, step 5 or its equivalent. If there are no such positions, the agency shall look for and offer other permanent full or part-time lower graded positions for which plaintiff is eligible in the commuting area.

If there are no positions at plaintiff's equivalent grade and he chooses not to accept a lower graded position, he shall be eligible for disability retirement, assuming he meets the other regulatory requirements of the government retirement system.

Plaintiff shall be awarded all sick and annual leave, contributions to medical insurance and his retirement fund and any other benefits which would have accrued to him since February 17, 1982 which he has not received. Plaintiff shall also be reimbursed for any medical costs he has incurred for himself or his family which would have been covered by any medical insurance he would have had if employed. This includes any payments for medical costs plaintiff may have received from any welfare agency which he is required to reimburse.

Plaintiff shall be awarded his attorney's fees and costs in pursuing this matter, subject to evidence of those fees and costs being submitted by counsel to the Court for approval.

The Court will enter a separate order.

## ORDER

In accordance with the Court's Memorandum Opinion of even date, it is this 30th day of September, 1987, by the United States District Court for the District of Maryland,

ORDERED:

1) That judgment BE, and the same hereby IS, ENTERED for plaintiff and against defendant;

2) That plaintiff is entitled to the relief set forth in the accompanying Memorandum Opinion;

3) That plaintiff's petition for attorney's fees and costs shall be filed within thirty (30) days of the date of this Order, after which time defendant shall respond; and

## APPENDIX I

The following vacant positions as described in the appropriately numbered job description were requisitioned to be filled at Aberdeen Proving Ground (APG) from February 5 through November 18, 1982, and were listed on the APG Vacancy Lists prepared by the APG Personnel Office and were filled on the dates indicated:

| REQUISITION NO. | TITLE | SERIES AND GRADE | VACANCY LIST DATE (1982) | JOB DESCRIPTION NUMBER |
|---|---|---|---|---|
| AG–81–537 Filled: | Shipment Clerk 4/18/82 | GS–2134–04 | 2/5,2/12,2/19,3/5, 3/12,3/19 | 68–327 |
| AG–82–80 Filled: | Supply Clerk 11/7/82 | GS–2005–05 | 4/23,4/30,5/7,5/14, 6/4,6/11,6/18,6/25, 7/2,7/11,7/16,9/3, 9/10,9/17 | (78A–696A) (78A–696) |
| AG–82–59 Filled: | Supply Clerk 5/9/82 | GS–2005–04 | 4/2 | OA–1155 |
| AG–82–154 Filled: | Supply Clerk 11/29/82 | GS–2005–04 | 8/20,8/27,9/3,9/10, 9/17,9/24,10/15, 10/8,10/1,10/22, 10/29,11/10,11/18 | OA–1155 |
| AG–82–146 Filled: | Supply Clerk 12/19/82 | GS–2005–04 | 8/20,8/27,9/3,9/10, 9/17,9/24,10/15, 10/8,10/1,10/22, 10/29,11/10,11/18 | OA–1155 |
| AG–82–145 | Supply Clerk | GS–2005–05 | 9/24,10/1,10/8,10/15, 10/22,10/29,11/10, 11/18 | 82A–995 |
| C–91 Filled: | Voucher Examiner 9/6/82 | GS–540–03 (FP–05) | 7/11,7/16,7/23, 7/30,8/6,8/13 | 82A–134 |
| C–98 | Payroll Clerk | GS–544–03 | 5/14,5/27,6/4,6/11, | A–3728 |

| REQUISITION NO. | TITLE | SERIES AND GRADE | VACANCY LIST DATE (1982) | JOB DESCRIPTION NUMBER |
|---|---|---|---|---|
| Filled: 7/26/82 | | (FP–05) | 6/18,6/25 | |
| HD 33–82 | Supply Clerk | GS–2005–05 | 8/6 | 82A–51 |
| Filled: 9/6/82 | | | | |
| MSD–24–82 | Clerk | GS–303–02 | 6/25 | 82A–448 |
| CS–118–82 | Sup. Cataloger | GS–2050–05 | 6/25,7/2,7/11,7/16, | 81A–360 |
| Filled: 9/6/82 | | FP–07 | 8/6,8/13 | |
| CS–127–82 | Supply Clerk | GS–2005–05 | 7/2,7/11,7/16,8/6, | A–516 |
| Filled: 9/6/82 | | | 8/13 | |
| CS–174–82 | Supply Tech. (Typ) | GS–2005–06 | 9/10,9/24 | 76A–328 |
| Filled: 11/29/82 | | FP–07 | | |
| SS–1–82 Summer hire | Recreation Aid | GS–189–03 | 2/5,2/12,2/19,3/5, 3/12,3/19,3/26,4/2, 4/9,4/16,4/23,4/30, 5/7,5/14,5/27,6/4, 6/11 | 81A–123 |
| SS–2–82 Summer hire | Recreation Aid | GS–189–03 | 2/5,2/12,2/19,3/5, 3/12,3/19,3/26,4/2, 4/9,4/16,4/23,4/30, 5/7,5/14,5/27,6/4, 6/11 | 81A–123 |
| SS–3–82 Summer hire | Recreation Aid | GS–189–03 | 2/5,2/12,2/19,3/5, 3/12,3/19,3/26,4/2, 4/9,4/16,4/23,4/30, 5/7,5/14,5/27,6/4, 6/11 | 81A–123 |
| SS–4–82 Summer hire | Recreation Aid | GS–189–03 | 2/5,2/12,2/19,3/5, 3/12,3/19,3/26,4/2, 4/9,4/16,4/23,4/30, 5/7,5/14,5/27,6/4, 6/11 | 81A–123 |
| SS–5–82 Summer hire | Recreation Aid | GS–189–03 | 2/5,2/12,2/19,3/5, 3/12,3/19,3/26,4/2, 4/9,4/16,4/23,4/30, 5/7,5/14,5/27,6/4, 6/11 | 81A–123 |
| PE–500 | Work Order Clk | GS–303–04 | 7/16,7/23,7/30,8/6, 8/13 | 82A–897 |
| Filled: 8/23/82 | | | | |
| TSA 7–82 | Sales Store Checker | GS–2091–02 (Int) | 4/30,5/14,5/27 | A–7870 |
| Filled: 12/22/82 | | | | |
| TSA 14–82 | Sales Store Checker | GS–2091–02 (Int) | 2/5,2/12,2/19,3/5, 3/12,3/19 | A–7870 |
| Filled: 4/20/82 | | | | |
| TSA 35–82 | Sales Store Checker | GS–2091–02 (Int) | 2/5,2/12,2/19,3/5, 3/12,3/19,5/14,5/27 | A–7870 |
| Filled: 7/13/82 | | | | |
| KAHC 21–82 | Medical Records Clerk | (GS–675–03) (GS–679–03) | 3/19,3/26 | 81A–323 |
| Filled: 4/12/82 | | | | |
| CCD–103 | Supply Techn. | GS–2005–06 | 2/5,2/12,2/19 | 77A–783 |
| Filled: 4/12/82 | | | | |
| PX81H270 | Clerk Mtr Veh Opr | GS–303–01 (FPL–GS– 05) | 2/5,2/12,2/19,3/5, 3/12,3/19 | 81E–420 |
| Filled: 4/11/82 | | | | |
| PAD–34–82 | Supply Clerk | GS–2005–05 FPL GS–07 | 8/13,8/20,8/27,9/3, 9/10,9/17,9/24 | 82E–495 |
| Filled: 12/2/82 | | | | |
| BRL–450 | Supply Clerk (Typ) | GS–2005–03 | 11/18 | DA–40 |
| Filled: 3/27/83 | | | | |
| BRL–592 | Supply Clerk (Typ) | GS–2005–05 | 11/18 | 82E–594 |
| Filled: 5/8/83 | | | | |
| HSE 140–82 | Secretary (Typ) | GS–318–5 | 7/11,7/16,7/23,7/30, 8/6,8/13,8/20,8/27 | 80A–54 |
| Filled: 10/4/82 | | | | |
| CLW–208–81 | Supply Clerk | GS–2005–5 FPL GS–7 | 2/5,2/12,2/19 | 82E–85 |
| Filled: 4/4/82 | | | | |

16. At the time of plaintiff's dismissal his grade was WG–5 (Wage Grade).

17. The pay level of WG–5 exceeds the pay level of grade GS–6 or lower for General Schedule positions.