654 So.2d 698 (1995)
Stephen A. RIDDLE
v.
LOUISIANA POWER AND LIGHT COMPANY.
No. 94 CA 1386.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
Rehearing Denied May 25, 1995.
Thomas J. Hogan, Jr., Hammond, for appellant, Stephen A. Riddle.
Michael J. Molony, Jr., New Orleans, for appellee, Louisiana Power & Light Co.
Before GONZALES, PARRO and REDMANN[1], JJ.
GONZALES, Judge.
Plaintiff, Stephen P. Riddle, began working as a meter reader for Louisiana Power & Light Company (LP & L) in 1972. He began experiencing pain in his knees in 1988 or early 1989. His condition was diagnosed as chondromalacia on January 27, 1989, and his doctor advised him to seek less strenuous work. In 1990, following surgery, Mr. Riddle returned to work at LP & L and was assigned to a temporary light duty job. LP & L assisted Mr. Riddle in applying for long-term disability benefits. Mr. Riddle was found to be eligible for long-term disability benefits, began receiving long-term disability benefits, and was then terminated as physically unable to work on October 25, 1990. Plaintiff filed suit against LP & L on October *699 24, 1991, alleging that he was a handicapped person within the meaning of the Louisiana Civil Rights for Handicapped Persons Act, La.R.S. 46:2251 et seq. Mr. Riddle alleged that LP & L had violated the law by failing or refusing to reasonably accommodate him on the basis of his handicap; discharging or otherwise discriminating against him with respect to compensation or the terms, conditions or privileges of employment; limiting, segregating or classifying him in a way that deprived him of employment opportunities; and failing or refusing to promote him, and discharging him, on the basis of a physical exam that was not directly related to the requirements of all jobs Mr. Riddle was physically able to do.
Mr. Riddle prayed for damages for loss of wages, loss of fringe benefits, and mental and emotional suffering. LP & L answered the petition, then filed a motion for summary judgment. By judgment signed April 27, 1994, the trial court granted the motion for summary judgment, and plaintiff's petition was dismissed at his cost.[2] Also on April 27, 1994, Mr. Riddle filed an appeal. Thereafter, the court signed a second judgment on May 4, 1994, granting the motion for summary judgment and dismissing Mr. Riddle's suit with prejudice, and ordering plaintiff to pay all court costs incurred by LP & L, including court reporters' charges paid for depositions. On May 12, 1994, Mr. Riddle filed a motion for appeal of the May 4, 1994 judgment.
Mr. Riddle made the following assignment of errors:
1. The trial court should not have granted the motion for summary judgment.
2. The trial court should not have awarded costs of depositions which were not used at the hearing.

THE CIVIL RIGHTS FOR HANDICAPPED PERSONS ACT
Louisiana Revised Statute 46:2253 provides in pertinent part:
(1) "Handicapped person" means any person who has an impairment which substantially limits one or more life activities or (a) has a record of such an impairment or (b) is regarded as having such an impairment.
(2) "Impairment" means retardation; any physical or physiological disorder or condition, or prior mental disorder or condition, but, at the discretion of the employer, not to include chronic alcoholism or any other form of active drug addiction; any cosmetic disfigurement; or an anatomical loss of body systems.
* * * * * *
(19) "Reasonable accommodation" means an adjustment or modification to a known physical limitation of an otherwise qualified applicant or employee which would not impose an undue hardship on the employer. This shall not require an employer to spend more for architectural modifications than that amount now allowed as a federal tax deduction. However, "reasonable accommodation" shall not be construed to impose on any private sector employer, unless otherwise required by law under any contract with a federal, state or local governmental body or subdivision, any additional costs in the hiring or the promotion of a handicapped person. Undue hardship is determined on a case by case basis taking into account the following:
(a) Employee for which accommodation is to be made.
(b) Specific disability of employee.
(c) Essential job duties of employee.
(d) Working environment.
Louisiana Revised Statute 46:2254(A) provides:
No otherwise qualified person shall, on the basis of a handicap, be subjected to discrimination in employment, by any educational facility, in any real estate transaction, or be excluded from participating in, or denied the benefits of, any program or activity which receives financial assistance from the state or any of its political subdivisions.
Louisiana Revised Statutes 46:2254(C) provides in pertinent part:
*700 An employer, labor organization, or employment agency shall not:
(1) Fail or refuse to hire, promote, or reasonably accommodate an otherwise qualified individual on the basis of a handicap when it is unrelated to the individual's ability with reasonable accommodation to perform the duties of a particular job or position.
(2) Discharge or otherwise discriminate against an otherwise qualified individual with respect to compensation or the terms, conditions, or privileges of employment, on the basis of a handicap when it is unrelated to the individual's ability to perform the duties of a particular job or position.
(3) Limit, segregate or classify an otherwise qualified employee or applicant for employment in a way which deprives an individual of employment opportunities or otherwise adversely affects the status of an employee on the basis of a handicap when it is unrelated to the individual's ability to perform the duties of a particular job or position.
(4) Fail or refuse to hire, or promote an otherwise qualified individual on the basis of physical or mental examinations or preemployment interviews that are not directly related to the requirements of the specific job, or which are not required of all employees.
(5) Discharge or take other discriminatory action against an otherwise qualified individual on the basis of physical or mental examinations or preemployment interviews that are not directly related to the requirements of the specific job or are not required of all employees.
(6) Fail or refuse to hire, or promote an otherwise qualified individual when adaptive devices or aids may need to be utilized to enable that individual, at the employee's own expense, to perform the specific requirements of the job.
(7) Discharge or take other discriminatory action against an otherwise qualified individual when adaptive devices or aids may need to be utilized to enable that individual, at the employee's own expense, to perform the specific requirements of the job.

* * * * * *

ASSIGNMENT OF ERROR NO. 1
Mr. Riddle does not dispute the fact that he is unable to perform his regular job duties as a meter reader. In this case, LP & L accommodated Mr. Riddle by placing him in a position which required only desk work for several weeks. However, this was only a temporary position which consisted of Mr. Riddle performing another meter reader's office paperwork while the meter reader did only field duty. Mr. Riddle argues that LP & L should have given him a permanent light duty position such as the one he performed on a temporary basis. However, LP & L argues that this temporary position was not available permanently, as there were no meter reader positions which did not include field work. Mr. Riddle argues that the burden was on LP & L to find him another position which he could perform within the company, and because they failed to do so, they discriminated against him based on his handicap. LP & L argues that the burden was on Mr. Riddle to apply for another job at LP & L, that Mr. Riddle was aware of the job information system available to all employees, had used it previously, and failed to utilize the system and apply for another job which he could perform.
LP & L argues that, before a person is entitled to reasonable accommodation under the Louisiana Civil Rights for Handicapped Persons Act, that person must be "otherwise qualified" under the act, and that Mr. Riddle is not "otherwise qualified;" therefore, LP & L had no duty to accommodate him. LP & L cites as support for its position Ramie v. Department of Fire, 617 So.2d 92 (La.App. 4th Cir.1993). In that case, Mr. Ramie was exposed to burning butadiene and smoke and fumes, and later experienced episodes of unexplained bleeding from the mouth and nose following exposure to smoke. Doctors agreed that Mr. Ramie should avoid exposure to smoke, and he was thereafter terminated from his position as a firefighter because he was unable to perform the duties of a fireman due to his medical condition. Mr. Ramie requested a transfer to another job *701 within the fire department which did not require smoke exposure. The fire department stated that it did not have the power to transfer Mr. Ramie into another division and such a transfer would entail changing Mr. Ramie's classification which must be accomplished through the Department of Civil Service. Mr. Ramie appealed to the Civil Service Commission, which affirmed his dismissal from the fire department. Mr. Ramie then appealed, arguing that the Civil Service Commission erred in failing to find a violation of La.R.S. 46:2254(C), failure to reasonably accommodate a handicapped employee. As stated in Ramie:
La.R.S. 46:2253(4)(a) defines "otherwise qualified handicapped person" as "a handicapped person who, with reasonable accommodation can perform the essential functions of the job in question." ... This definition, when read in conjunction with La.R.S. 46:2254(C)(2), supra, contemplates an adjustment or modification (i.e. an accommodation) which would enable an individual to overcome a physical disability so that he would then have the ability to perform the duties of the particular job or position in question.
There is nothing in the record which indicates that the Department could make any type of accommodation, much less a reasonable one, which would enable Ramie to overcome his physical condition so that he would have the ability to perform the essential duties of a firefighter. Additionally, Ramie admitted that he could not perform the job of a firefighter while his condition persisted. Although he hoped to eventually recover, Ramie testified that doctors had been unable to diagnose a cause of his condition and offered nothing to indicate that there was any hope that his condition would subside.
. . . . .
There is nothing in the record which indicates that there is anything which can be done to accommodate Ramie so that he can perform the essential functions of a firefighter. Therefore, the Fire Department's decision to terminate Ramie from the Suppression Division is not in violation of La.R.S. 46:2254(C). The Fire Department's decision not to transfer Ramie within the Fire Suppression Division since every member of that division must be able to fight fires also does not violate any of Ramie's rights. Therefore, the Fire Department's decision not to transfer Ramie into another division is not in violation of La.R.S. 46:2254(C).
617 So.2d at 94, 95.
In another case cited by LP & L, Kraemer v. Santa Fe Offshore Construction Company, 579 So.2d 488 (La.App. 4th Cir.1991), Mr. Kraemer was hired as a combination welder which required that he be able to work both onshore and offshore. When Mr. Kraemer was diagnosed with a life-threatening allergic condition and his doctor recommended that he temporarily work onshore only, his employer accommodated him by only assigning onshore duties to him. The employer allowed Mr. Kraemer to work only onshore for almost two years, then terminated him when he informed his employer that his doctor recommended that he refrain from working offshore for another six months. The appellate court in that case stated:
... The trial judge found that the defendant reasonably attempted to accommodate the plaintiff for a reasonable period of time and terminated him only when he could not return to his full former duties.
* * * * * *
... Because all employees hired by the defendant as combination welders, including plaintiff, were required to be able to work onshore and offshore, the continued restrictions placed upon plaintiff by his physician made him unable to perform his job duties. The defendant was more than reasonable in accommodating plaintiff by allowing him to work onshore only for almost two years. Therefore, there is no manifest error in the trial judge's finding that the defendant reasonably accommodated the plaintiff.
579 So.2d at 491.
In both the Ramie and Kraemer cases, the courts concluded that the employers were within their rights in terminating the employees after they became unable, because of their medical conditions, to perform the essential *702 functions of their positions. Mr. Riddle argues that Ramie and Kraemer are distinguishable from his case because in those cases there were no positions which the employees could be transferred to which their medical conditions would allow them to perform.
In interpreting the Louisiana Civil Rights Act for Handicapped Persons, La.R.S. 46:2251 et seq., a Louisiana court has consulted federal jurisprudence interpreting the analogous federal Rehabilitation Act of 1978, 29 U.S.C. § 701 et seq. See Turner v. City of Monroe, 25-554, p. 5 (La.App. 2nd Cir. 3/30/94), 634 So.2d 981, 984.
The only court case which Mr. Riddle cites as support for his position that "reasonable accommodation" includes reassignment to another position is Coley v. Secretary of the Army, 689 F.Supp. 519 (D.Md.1987).[3] In Coley, the court did find that "reasonable accommodation" included a duty to reassign a handicapped civilian worker in the Army. However, in that case, the court relied upon "a clearly articulated and established policy of reassigning handicapped persons." 689 F.Supp. at 522. This policy was codified in the Federal Personnel Manual. LP & L argues in its supplemental brief that the Coley decision is inconsistent with, and overruled by, a later decision by that same court, Little v. Federal Bureau of Investigation, 793 F.Supp. 652 (D.Md.1992), affirmed, 1 F.3d 255 (4th Cir.1993), which found no duty under "reasonable accommodation" law to transfer an alcoholic FBI agent to another, non-agent job.
In Little, the court relied upon Guillot v. Garrett, 970 F.2d 1320 (4th Cir.1992), in which it was held that "there is no duty imposed upon a federal agency to find another job as a `reasonable accommodation' for an employee who is unfit for the performance of his or her duties in his present position." Little, 793 F.Supp. at 654. The Guillot decision was based upon an EEOC regulation, 29 C.F.R. § 1613.704, similar to La.R.S. 46:2253(4) regarding its definition of "qualified handicapped person." The regulation defined "qualified handicapped person" as one who with reasonable accommodation could "perform the essential functions of the position in question." Guillot, 970 F.2d at 1327. Guillot follows the majority rule of federal cases which find no duty under the law of "reasonable accommodation" to reassign a worker to another position when he can no longer perform his job.
In Wimbley v. Bolger, 642 F.Supp. 481 (W.D.Tenn.1986), affirmed, 831 F.2d 298 (6th Cir.1987), a postal employee who suffered excessive absenteeism and had diabetes and a mental condition was fired. He filed suit under the federal Rehabilitation Act, alleging that his handicap was not reasonably accommodated under the law. The court found:
Plaintiff also suggested in the pre-trial order that he be put in another job with less pressure as an accommodation of his problem. First, it must be noted that a federal agency is under no obligation to transfer a handicapped employee from the job for which he is employed to some other position in order to provide him with work which he can perform.
642 F.Supp. at 486.
As stated in Carty v. Carlin, 623 F.Supp. 1181, 1188 (D.C.Md.1985):
Examination of the regulation lends to the ultimate conclusion that the duty to reasonably accommodate only contemplates accommodation of a qualified handicapped employee's present position. It does not include a requirement to reassign or transfer an employee to another position. Preferential reassignment for handicapped employees was not intended by the Rehabilitation Act. The Rehabilitation Act and its accompanying regulations indicate that the law requires reasonable workplace modification or accommodation in order to allow the handicapped person to remain in that position. There is nothing in the law or accompanying regulations to suggest that reasonable accommodation requires an agency to reassign an employee to another position. (Emphasis added.)
*703 In Mackie v. Runyon, 804 F.Supp. 1508 (M.D.Fla.1992), a postal service employee suffered a mental illness which prevented her from working at night. She requested a reassignment from her position as a letter sorting machine operator, which required primarily night shift work, to day shifts as a manual clerk or carrier. The defendant filed a motion for summary judgment, alleging that the plaintiff was not an otherwise qualified handicapped individual because she could no longer perform the essential functions of her position, and further, summary judgment was warranted because it could not reasonably accommodate plaintiff's mental illness. The Mackie court found that "Although plaintiff requested day shifts as a manual clerk or a carrier, the Rehabilitation Act does not require defendant to reassign plaintiff to another position to accommodate her mental illness." 804 F.Supp. at 1511. See also Alderson v. Postmaster General of United States, 598 F.Supp. 49 (W.D.Okla. 1984), in which the court found that a postal worker who could not meet the physically demanding requirements of a letter carrier was not "otherwise qualified" under the law and further was not entitled to be reassigned to another position.
Clearly, as admitted by Mr. Riddle at trial, he was not able to perform the physical duties required of a meter reader. Because there were no meter reader positions which did not require strenuous physical activity, Mr. Riddle was unable to perform the duties of his job or position with reasonable accommodation, therefore he was not "otherwise qualified" under the law. Further, the law does not require that LP & L reassign Mr. Riddle to a new position as a reasonable accommodation. Mr. Riddle was free to utilize the job information system provided by LP & L and apply for any job opening which he was qualified for and physically able to perform. However, LP & L was not required to undertake a job search for him when he could no longer perform the duties of his particular job or position.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
Louisiana Code of Civil Procedure article 2088 provides in pertinent part:
The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
(10) Set and tax costs and expert witness fees.
Louisiana Revised Statute 13:4533 provides:
The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.
Mr. Riddle argues that the cost of the depositions is not taxable because LP & L submitted only excerpts of the depositions at the motion for summary judgment, not the entire depositions. However, he cites no authority to support this position and we find that clearly, under the law, the trial court retained jurisdiction to order Mr. Riddle to pay court costs, including deposition fees. We find no distinction in the law where only portions of the depositions were utilized at the hearing, and therefore, we find no legal error by the trial court.[4]
This assignment of error has no merit.[5]

DECREE
For the foregoing reasons, the trial court judgments are AFFIRMED. Mr. Riddle is cast for costs.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Mr. Riddle stipulated that the first judgment was with prejudice.
[3] Mr. Riddle also cites a decision of the Merit Systems Protection Board (MSPB) in Ignacio v. United States Postal Service, 30 M.S.P.R. 471 (1986). The MPSB is not a court, but rather an administrative body designated by statute to apply provisions of the Civil Service Reform Act. See Debose v. United States Department of Agriculture, 700 F.2d 1262, 1266 (9th Cir.1983).
[4] Once the first judgment was signed, the better practice would have been for the trial court to tax costs after a rule to show cause pursuant to La.C.C.P. art. 1920.
[5] We have addressed both of Mr. Riddle's assignments of error. Other issues raised in his reply brief are not properly before us on appeal.