**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-31169
Summary Calendar

JAMES M. ROBERTSON, M.D. and VICTORIA ROBERTSON,

Plaintiffs-Appellants-Cross-Appellees,

VERSUS

THE NEUROMEDICAL CENTER, THOMAS B. FLYNN, JOHN R. CLIFFORD,
ANTHONY S. IOPPOLO, ALLEN S. JOSEPH, THOMAS P. PERONE, L. ALLEN
PROCTOR, OSCAR L. ROGERS, III, CAROLYN C. BAKER, SUSAN L.
SCARBERRY, and BARBARA J. GOLDEN,

Defendants-Appellees-Cross-Appellants.

Appeals from the United States District Court
for the Middle District of Louisiana

December 3, 1998

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants ("the Robertsons") sued the Defendants-Appellees, (collectively, "the NMC") under the Americans with Disabilities Act of 1990 ("the ADA"), as well as other state-law claims, alleging that the NMC had discriminated against Dr. Robertson in firing him. Robertson claims that the NMC failed to make reasonable accommodations for his Attention Deficit

1

Hyperactivity Disorder ("ADHD"). The district court entered summary judgment in favor of the defendants on the claims under the ADA, but remanded the Robertsons' state-law claims, including a claim under the Louisianians with Disabilities Act ("the LDA"), back to state court for further proceedings. The Robertsons now appeal from the grant of summary judgment, and the NMC appeals from the remand of the state-law claims. For the following reasons, we affirm.

## I. Background and Procedural History

Plaintiff, Dr. James Robertson, had been a neurologist at the NMC in Baton Rouge since 1981. He was a shareholder in the NMC Corporation and was working under an employment contract until the time of his termination. In May 1994, at the suggestion of one of his colleagues, Robertson was tested and diagnosed with ADHD. Approximately four months later, he was terminated from his employment with the NMC. Robertson contends that he was wrongfully discharged because of his diagnoses of ADHD and that reasonable accommodations were recommended, but never implemented. The NMC contends that certain of Robertson's work-related problems predated his diagnosis of ADHD, and that those problems resulted in his termination "for cause" as provided in his employment contract.

Originally filed in Louisiana state court, the Robertsons filed suit against the NMC and various individual doctors alleging violations of the ADA as well as a similar claim under the LDA and other state-law causes of action. Later, the NMC removed the case

2

to federal court on the basis of the ADA claim. Upon a motion filed by the NMC, the court granted summary judgment on the ADA claim, finding that no genuine issue of material fact existed on whether Dr. Robertson was a "qualified individual" able to recover under the ADA. Declining to exercise supplemental jurisdiction over the remaining state-law claims, the district court remanded them back to state court for further proceedings.

## II. Discussion

After reviewing the record before us and the applicable law, we conclude that the district court's grant of summary judgment on behalf of the NMC should be affirmed.

In reviewing the district court's grant of summary judgment, questions of fact are viewed in the light most favorable to the non-movant and questions of law are reviewed *de novo*. *See* Deas v. River West, L.P., 152 F.3d 471, 475 (5th Cir. 1998). As this court has stated in Hypes v. First Commerce Corp., "[i]f plaintiff lacks evidence sufficient to create a genuine issue of fact in support of a necessary element of a claim or claims, then summary judgment is appropriate against plaintiff on that claim." 134 F.3d 721, 725 (5th Cir. 1998)(citing FED. R. CIV. P. 56(c)).

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a)(1994). To establish a prima facie case of discriminatory firing, a plaintiff must prove: (1) he has a "disability;" (2) he is a "qualified individual" for the job in question; and (3) an adverse employment decision was made because of his disability. *See* id.; Hamilton v. Southwestern Bell Telephone Co., 136 F.3d 1047, 1049 (5th Cir. 1998).

## A. Was Dr. Robertson a "Qualified Individual" Under the ADA?

The basis on which the district court granted summary judgment in this case was because the plaintiffs, as a matter of law, could not prove that Dr. Robertson was a "qualified individual" with a disability--that is, one who can perform the essential functions of his job with or without reasonable accommodations. *See* 42 U.S.C. §12111(8). Dr. Robertson contends that either the administrative portions of his job were not "essential functions" as defined under the Act, or even if they were, he would have been able to perform them with the aid of reasonable accommodations.

After a review of the record, we conclude that the "administrative portion" of Dr. Robertson's job is unquestionably one of its essential functions. Contrary to the Robertson's blatant attempt to minimize its importance, we believe: (1) that the administrative portion of Dr. Robertson's job is one of the major reasons why his position existed in the first place; (2) that Dr. Robertson, as a neurologist was one of the few employees at the

4

NMC to whom those administrative duties could have been distributed; and (3) that the highly specialized administrative portion of the job could not be transferred to someone without expertise in that area without destroying the utility of the job altogether.[1] Indeed, Dr. Robertson's own definition of a neurologist stated that studying and analyzing tests and blood work were part of what defined the job. Accordingly, we agree with the district court's determination that no factual dispute exists as to the essential functions of Dr. Robertson's job.

Next, we must address whether Dr. Robertson could perform this essential part of his job with the aid of "reasonable accommodations." In support of his argument, Dr. Robertson has proposed, among other things, either a part time position, no call duty, that he be allowed to treat his ADHD with medication, or that a clerical assistant could be hired to oversee his administrative duties.

We agree with the district court's conclusion that "[c]onsidering the limitations on plaintiff's abilities caused by

---

[1]The Code of Federal Regulations provides that,
(2) A job function may be considered essential for any of several reasons, including but not limited to the following:
(i) . . . because the reason the position exists is to perform that function;
(ii) . . . because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
(iii) the function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform that particular function.
29 C.F.R. § 1630.2(n)(2).

5

ADHD, the type of work he is engaged in, the interests of NMC in running its business, and most importantly, the safety of the patients at NMC . . . plaintiff cannot establish a prima facie case that he could continue in his position as a neurologist because accommodation is not possible in these circumstances." Order and Reasons, October 9, 1997, at 32.

First, the ADA does not require an employer to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties. As this court has stated in describing what is required of an employer for accommodation purposes, "the law does not require an employer to transfer from the disabled employee any of the essential functions of his job." Barber v. Nabors Drilling U.S.A., Inc., 130 F.3d 702, 709 (5th Cir. 1997); *accord* Riddle v. Louisiana Power & Light Co., 654 So.2d 698, 701 (La. App. Cir. 1995). Also, when the Barber Court was confronted with a similar request to what has been suggested by Dr. Robertson as a reasonable accommodation--here the hiring of an administrative assistant, the court responded: "[w]e cannot say that [the disabled] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the disabled] not to perform those essential functions." *Id*. Likewise, we conclude that the ADA does not require NMC in this case to transfer any of the essential functions of Dr. Robertson's

6

job to an assistant or to anyone else. If he can't perform the essential functions of his job absent assigning those duties to someone else, (e.g., having someone else perform his job) then Dr. Robertson can not be reasonably accommodated as a matter of law. *See generally* Reigel v. Kaiser Foundation Health, 859 F.Supp. 963(E.D. N.C. 1994)(holding that physician's request for re-assignment to part-time position, position with no call duty or position of supervision, all of which would have depleted the group's physicians by one and increased the administrative staff by one, was not a reasonable accommodation).

Second, the ADA does not require an employer to accommodate an individual if the employee would pose a direct threat to the health and safety of others. *See* 42 U.S.C. § 12113(b); Turco v. Hoescht Celanese Corp., 101 F.3d 1090 (5th Cir. 1996). Based on his own testimony that he was concerned for his patients' safety, Robertson posed a "direct threat" to the health and safety of others in the workplace. Robertson's short-term memory problems had already caused various mistakes to be made in patients' charts and in dispensing medicine. Most significantly, Robertson voiced his own concerns about his ability to take care of patients, stating that it was only a matter of time before he seriously hurt someone. In light of this evidence, we agree with the district court's conclusion that any accommodations in this case would be unjustified from the standpoint of the basic medical safety of Dr.

7

Robertson's patients.

Third, Dr. Robertson mischaracterizes the decision to take or not to take medication for his condition as an accommodation option available to NMC. Because this personal decision rests solely with Dr. Robertson, NMC was not in a position to "accommodate" him in this way. Thus, we find this argument wholly without merit.

Therefore, after a review the record before us in a light most favorable to the Robertsons, we conclude that no issue of material fact remains on whether Dr. Robertson was a "qualified individual" under the ADA. The district court was correct in granting summary judgment in favor of NMC.

B. Remand of Pendent State-law Claims

Next, we turn to NMC's cross-appeal challenging the district court's remand of the Robertson's claims under the LDA. Under the doctrine of pendent jurisdiction, a federal court has the constitutional power to hear a state law claim if it is closely related to another federal claim. *See* United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966). However, it is clear that a district court has wide discretion to refuse to hear a pendent state law claim. *See* 28 U.S.C. § 1367(c)(3); United States v. Capeletti Bros., Inc., 621 F.2d 1309, 1317-18 (5th Cir. 1980). We will therefore reverse a district court's decision to remand pendent state law claims after dismissing all remaining federal claims only upon a finding of abuse of this "wide" discretion. *See*

<u>Parker & Parsley Petroleum Co. V. Dresser Indus.</u>, 972 F.2d 580, 585 (5th Cir. 1992). The Supreme Court identified certain circumstances that should persuade a court to dismiss a state claim: "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." <u>United Mine Workers</u>, 383 U.S. at 726. As such is the situation in this case, we hold that the district court did not abuse its wide discretion in refusing to hear the Robertson's claims under the LDA.

## III. <u>Conclusion</u>

For the foregoing reasons, we AFFIRM.