Leonard W. TAYLOR, Plaintiff,

v.

UNITED STATES POSTAL SERVICE, et al., Defendants.

No. C–1–89–278.

United States District Court, S.D. Ohio, W.D.

Nov. 29, 1990.

Michael J Mooney, Cincinnati, Ohio, for plaintiff.

Jan Martin Holtzman, Dept. of Justice, Cincinnati, Ohio, Robert L Sawicki, U.S. Postal Service, Office of Field Legal Services, Philadelphia, Pa., for Postal Service (U.S.).

Jan Martin Holtzman, Dept. of Justice, Cincinnati, Ohio, for Anthony M Frank, U.S. Postmaster General.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, DECISION, AND ORDER

JACK SHERMAN, Jr., United States Magistrate Judge.

This case is before the Court following a non-jury trial on the merits and the parties' post-trial briefs. The parties have consented that all proceedings in this action including trial and entry of final judgment, may be concluded by the United States Magistrate. (Doc. 8).

Plaintiff Leonard W. Taylor brings this action under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794, (Rehabilitation Act) alleging that defendant United States Postal Service discriminated against him on the basis of his physical handicap by refusing to hire him as a postal distribution clerk in the Franklin, Ohio Post Office. Defendant denies discriminating against Taylor because he is not "handicapped" within the meaning of § 791. Defendant also argues that assuming arguendo Taylor is "handicapped" within the meaning of § 791, he is not a "qualified handicapped person" within the meaning of § 794.

Taylor seeks employment with defendant, retroactive seniority, and damages for lost wages, fringe benefits, prejudgment interest, court costs, and attorney fees.

## Findings Of Fact

1. Taylor was born on September 17, 1944. After graduating from high school in 1963 he entered the United States Army where he served until 1966. During this period Taylor injured his left knee while playing football.

2. While working at an iron foundry in 1966, Taylor began experiencing a "pulling sensation in his back." (D-1, p. 4).

3. In late 1969 Taylor re-injured his left knee while climbing down a ladder. On December 13, 1969, surgeons removed the entire medial meniscus from his left knee. Taylor testified that he spent approximately four months recovering from the surgery. Because Taylor's original knee injury occurred when he was in the United States Army, the Veterans Administration classified him as a 20% disabled veteran.

4. In 1971 Taylor was admitted to a hospital with an "acute lumbral strain." (D-1, p. 1). He spent two weeks in the hospital undergoing traction, physiotherapy, and drug therapy. *Id.*

5. In 1974 Taylor experienced an "acute onset of low back pain" while working at home. (D-1, p. 2). Hospital records state that "[Taylor] found he was unable to move, stand, and was in excruciating pain." *Id.*

6. On March 17, 1976, hospital records indicate that Taylor was hospitalized for ten days due to back "stiffness and soreness ..., with radiation of pain into both hips." (D-1, p. 4).

7. On April 27, 1977, Taylor was admitted to the hospital due to "persistent back pain, with hip, thigh and leg pain ...," (D-1, p. 5). Surgeons performed a "partial hemilaminectomy" on Taylor's lower back, removing "an extruded fragment of disk material." *Id.*

8. Approximately one year later Taylor was admitted to the hospital for a "repeat myelography," to alleviate his "recurrent back pain." (D-1, p. 7). Following surgery Taylor was treated with physical therapy, diathermy, ultrasound, and traction. *Id.* Upon final discharge his back problem was diagnosed as "degenerative disc disease." *Id.*

9. In May 1979 Taylor experienced back pain when "he bent over to pick something up." (D-1, p. 8). He went to an emergency room where he was diagnosed as having a "parous muscle spasm." *Id.* He was not hospitalized as a result of this episode but was treated with drug therapy and told to "stay down for 72 hours ..." *Id.*

10. In May 1980 Taylor was hospitalized because of low back pain. (D-1, p. 9). A consulting physician, Dr. E. Malcom Field, recorded his opinion that Taylor had probably reactivated "his disc disease," but could not determine whether the injury involved a second disk rupture or a recurrent disc rupture. *Id.* On June 12, 1980, after his discharge from the hospital Taylor was examined by Dr. Field in his office. Dr. Field recorded that Taylor "continue[d] to complain of back pain and back stiffness and soreness but [did] not have any positive findings ..., and he has put on considerable amount of weight. I don't think that operative intervention is really indicated and have suggested that he obtain a lumbosacral brace and continue to work." *Id.* at 11.

11. On July 2, 1981, plaintiff visited Dr. Field who recorded that Taylor "had a great deal of stiffness and soreness in his back.... He had some hip pain. He has nothing symptomwise at this time and I was not able to pick up any evidence of abnormality.... [H]e has put on some weight, he moves somewhat slowly." (D-1, p. 12).

12. In 1982 Taylor injured his left knee while playing basketball as part of his position as a counselor with the Saginaw County, Michigan Board of Mental Health. (Taylor's testimony). This injury resulted in his walking on crutches for approximately two weeks.

13. During 1982 and 1983 Taylor was employed by the Defense Construction Sup-

ply Center. The work he performed at this position involved bending, squatting, walking, climbing, and lifting items weighing forty to sixty pounds. (P–1, p. 56).

14. Taylor testified that in 1983 the Veterans Administration reduced his disability rating from 20% to 10%. On January 11, 1983, Taylor applied to the Veterans Administration for an increase in disability benefits. (D–1, p. 16). In this application he stated the following in regard to his knee problems:

Narrative History. First incurred in military as a result of football injury—1964–65. Subsequent to that varying degrees of pain. While in Michigan, I saw several doctors and was in the V.A. Hospital in Saginaw in 1969–70. Dr. McEwen was the doctor who performed surger[y] in 1970 at [the] Saginaw General Hospital. Subsequent to that varying degrees of pain and deterioration. Weakness, locking out of joint periodically falling down due to lateral movement and constant pain. Recently treated at V.A. Dayton, Oh. [and] Dr. Jones Sprfld. [sic]....

Present Complaint. Constant pain in left knee. Lateral movement in left knee causing pain and weakness. Periodic limping due to severe pain. *Id.*

15. On December 12, 1985 Taylor was admitted to the Saginaw General Hospital for a cardiac catheterization. (D–1, p. 22). A physician at the hospital diagnosed Taylor as having "prinzmetal angina due to coronary spasm. Intermittent left bundle branch block." *Id.* The physician noted that Taylor had a "long-standing history of hypertension." *Id.* He was discharged from the hospital on December 20, 1985. *Id.*

16. In 1986 Taylor performed construction work for the Living Word Church. He installed dry wall and ceiling grids, framed walls, and performed other work as needed. The work involved standing ten hours per day, lifting items weighing thirty to forty-five pounds, and using carpentry tools. (P–1, p. 55).

17. In December 1986 Taylor experienced pain in his lower back while picking up a child. Taylor testified that although he went to the emergency room for treatment, he was not admitted to the hospital.

18. At the time of Taylor's application for employment with defendant, Dr. Doran Christensen was the Chief Medical Officer for defendant's Cincinnati, Ohio division. On January 20, 1987, Dr. Christensen sent a letter to Kenneth Nelms, defendant's Manager of Personnel Services, regarding Taylor's application for the position of City Mail Carrier. (J–4). Dr. Christensen informed Nelms that he believed Taylor was "unsuitable for a position as a Career Carrier within the United States Postal Service." *Id.* Dr. Christensen detailed his findings of Taylor's physical problems as follows:

[A] previous history of hypertension and angina which is currently treated and controlled.... a history of back surgery in 1977.... The left knee is mildly unstable and there is an abnormal click with range of motion of the left knee.... A low back scar from previous surgery is noted. There is also decreased range of motion of the lower lumbar segments, probably as a result of the previous surgery.

It is my opinion that Mr. Leonard Taylor would be a significant risk to himself if allowed to perform the functional requirements of the position requiring heavy lifting, moderate carrying and prolonged walking and standing on slippery and uneven walking surfaces.... There would be no way to accommodate Mr. Taylor with these multitude of problems, again without significant risk of injury to himself. (J–4).

19. On January 30, 1987, Taylor was conditionally hired for the position of Part–Time Flexible (PTF) Distribution Clerk at the Franklin, Ohio Post Office. (J–6). His employment was contingent on passing both a driver's examination and a physical examination. Taylor passed the driver's examination.

20. On February 10, 1987, he appeared for a medical examination before Dr. Christensen who did not perform a physical examination on Taylor since he had recently

examined Taylor. (J–7; Christensen's testimony). In a letter dated February 18, 1987, Christensen informed the Manager of Personnel Services in Defendant's Cincinnati division that Taylor was "unsuitable ..., for a position as Distribution Clerk." *Id.* Dr. Christensen also stated the following:

> Mr. Taylor has a number of medical/surgical problems, most of which are controlled or at least in abeyance. This prospective employee has the most important diagnoses as degenerative disc disease of the low back and the knees. Mr. Taylor has been in fairly light work over the past few years, although he tried construction work last summer. Recently also, he left a lighter job with the U.S. Government because of difficulties with his knees. Mr. Taylor was also permanently and totally disabled from a civilian business in 1978 because of his back surgery.
>
> It is my opinion that Mr. Taylor is not suitable for the physical exertion and strenuous activity required in positions as Carrier, Mailhandler, or Distribution Clerk. He would not be able to tolerate lifting on a repetitive basis greater than 25 pounds, prolonged standing/walking, prolonged sitting, or repetitive bending and stooping. (J–7).

21. In February 1987 and in December 1989 Dr. Steven Pledger, a Board certified orthopedic surgeon examined Taylor and concluded that he could perform the duties of a distribution clerk at the Franklin Post Office. He based this conclusion upon the assessment that Taylor could lift seventy pounds, stand, sit, walk, and bend. The only limitation Dr. Pledger suggested was that Taylor should avoid long periods of walking while simultaneously carrying heavy loads. (Pledger's Testimony).

22. On April 7, 1987, defendant's Supervisor of Employment and Placement for the Cincinnati division informed Taylor by letter that he was medically unsuitable for the position of Distribution clerk due to his history of "degenerative disease of the low back and knees." (J–9).

23. During the summer of 1987, Taylor was employed by the City of Middletown, Ohio as a part-time bus driver.

24. In November 1987 Taylor obtained work as a full-time mechanic with Aeronco, Inc. of Middletown, Ohio. This job involved using hand tools to manufacture aircraft parts. It required "a lot of bending and stooping," and did not involve sitting. One of the items he worked with was called a "pylon," which was six to eight feet in length, eighteen inches in diameter, and weighed approximately sixty pounds. Although Taylor normally carried a pylon with help from a co-worker, he recalled carrying a pylon without help on one occasion. At some point Taylor bid into a fabrication technician position, a higher paying position at Aeronco. This job involved operating large and small brake presses, a small drill press and other small machines. He performed this work standing, except for work at the small drill press, which required sitting. One of the tasks he performed was refilling the machines with dye, requiring him to lift canisters of dye weighing approximately forty to eighty pounds. In December 1988 Taylor was laid off from Aeronco, Inc. (Taylor's testimony).

25. Taylor testified that since 1987 he has not lost time from work due to any problems with his knee. He further testified that he does not have any current limitations from his prior knee injuries. Although he is able to jog, and to participate in such sports as basketball, baseball and football, he chooses not to participate because he does not want to risk injuring his knee.

26. At the time of trial Taylor was employed by the City of Middletown, Ohio as a water meter service worker. This job involved installing approximately ten water meters per day on residences and businesses in the Middletown area. In performing this job, Taylor spent two-thirds of his work day walking or standing. He routinely lifted meters weighing ten to forty pounds. Approximately once a month he installed a meter weighing eighty pounds. He also wore a tool belt weighing approximately ten to fifteen pounds, lifted ladders,

and loaded a truck with necessary supplies. Taylor performed this work alone—including the installations of the eighty pound water meter. (Taylor's Testimony).

## CONCLUSIONS OF LAW

█ 1. In order to establish that defendants discriminated against him on the basis of a physical handicap, Taylor must first show that he is a "handicapped person" within the meaning of 29 U.S.C. § 706(8)(B) (West Supp.1990). *See Harris v. Adams*, 873 F.2d 929, 933 (6th Cir.1989) (citing *Jasany v. United States Postal Service*, 755 F.2d 1244, 1248 (6th Cir.1985)). A "handicapped person" is one who:

(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(B); *see also Harris*, 873 F.2d at 933.

"'Physical ... impairment' means (1) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine ..." 29 C.F.R. § 1631.702(b).

"'Major life activities' means functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c); *see also Jasany*, 755 F.2d at 1248.

"'Has a record of such impairment' means has a history of, or has been classified (or misclassified) as having a ..., physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1613.702(d).

"'Is regarded as having such an impairment' means (1) has a physical ..., impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical ..., impairment that substantially limits major life activities only as a result of the attitude of an employer

toward such an impairment; (3) or has none of the impairments defined in [29 C.F.R. § 1613.702(b)] but is treated by an employer as having such an impairment." 29 C.F.R. § 1613.702(e).

2. Taylor Has Failed To Establish That He Is A "Handicapped Person."

## DECISION

Taylor argues that he qualifies as a "handicapped person" under all three criteria of § 1613.702(a). He contends that his back and knee injuries constitute a physical impairment because the injuries affect his musculoskeletal system. This physical impairment, in turn, makes him a handicapped person within the meaning of the Handicapped Rehabilitation Act because the impairment substantially limits several of his major life activities, including his inability to perform certain manual tasks such as carrying heavy items while walking, his inability to participate in sports that require sudden stops or quick lateral movements such as football, basketball, softball, and running. (Doc. 40, pp. 34–35) (citing § 1613.702(c)).

█ Taylor established at trial that his knee and back injuries constitute a physical impairment because the injuries affect his musculoskeletal system. *See* 29 C.F.R. § 1613.702(b)(1). He has failed, however, to show that his physical impairment substantially affected one or more of his major life activities. He did not present any evidence that his back or knee injuries in any way affect his ability to perform manual tasks such as standing, breathing, seeing, hearing, speaking, learning, or caring for himself. Taylor's own testimony established that he was not limited in his ability to perform major life activities: in his present job, he spends two-thirds of his work day walking or standing, and he repeatedly lifts water meters weighing up to forty pounds; in his job at Aeronco, Inc., he did alot of bending and stooping, and on one occasion he lifted, without help, a pylon weighing sixty pounds; he does not have any current limitations due to his knee injuries; and, he has not lost work time

since 1987 due to his knee injuries. *Supra,* p. 886. Taylor's argument that his injuries prevent him from participating in certain sports lacks merit because he testified that he is able to jog, and to participate in such sports as basketball, baseball, and football, but chooses not to participate, because he does not want to risk injuring his knee or back—not because he is in incapable of participating. *See supra,* pp. 886–887. Dr. Steven Pledger testified that Taylor could stand, sit, walk, or bend without limitation, and that the only limitation he would place on Taylor was to avoid walking while carrying heavy loads for long periods of time. *Supra,* p. 886. Although walking is a major life activity, *see* 1613.702(c), the fact that Taylor's knee and back injuries prevent him from walking with a heavy load for long periods of time does not "substantially affect" his ability to walk because he is capable of walking without limitation, for long periods of time. Dr. Pledger's limitation is, therefore, not enough to make Taylor a handicapped person within the meaning of the Rehabilitation Act. *Compare Daley v. Koch,* 892 F.2d 212 (2d Cir.1989) (person with "poor judgment, irresponsible behavior and poor impulse control" is not a handicapped person); *Torres v. Bogler,* 781 F.2d 1134 (5th Cir.1986) (left-handed individual is not a handicapped person); *Forrisi v. Bowen,* 794 F.2d 931 (4th Cir.1986) (person with acrophobia is not a handicapped person) *with Reynolds v. Brock,* 815 F.2d 571 (9th Cir.1987) (epileptic is a handicapped person); *Doe v. Dolton Elementary School District No. 148,* 694 F.Supp. 440 (N.D.Ill. 1988) (AIDS sufferer is a handicapped person).

■ Taylor argues that since he is unable to work as a postal letter carrier, his physical impairment substantially limits his major life activity of working. He further contends that since letter carriers comprise twenty-five percent of local Post Office jobs as well as twenty-five percent of the Post Office jobs available nationally (approximately 175,000 jobs), his ability to work is substantially limited. (Doc. 40, pp. 34–35) (citing § 1613.702(c)). These contentions lack merit.

■ The fact that Taylor is not physically capable of performing one particular job does not establish that he is a handicapped person within the meaning of the Rehabilitation Act, particularly when he has not established that his ability to obtain other employment is substantially limited. *See Jasany,* 755 F.2d at 1248. Although the number of jobs that Taylor is unable to perform is a pertinent factor to consider when analyzing whether his ability to work is substantially limited, *see id.* at 1249, other factors must be considered including the geographical area that Taylor has reasonable access to, and his job training and expectations. *See id.* Assuming that Taylor has reasonable access to the jobs available in Cincinnati, Ohio and the surrounding counties, his physical impairment does not bar him from all jobs involving manual labor; in fact, since 1987 he has been employed as a construction worker, a machinist, and a water meter service worker. *See supra,* pp. 886–887. Moreover, Taylor's lack of specialized training leaves him without the argument that his physical impairment prevents him from performing a job for which he uniquely qualified. *Cf. Coley v. Secretary of Army,* 689 F.Supp. 519 (D.Md.1987) (osteoarthritis sufferer is a handicapped person not only because he could no longer perform the unique functions of warehouse worker, but also because he could no longer perform any jobs involving manual labor). Accordingly, Taylor has not established that his physical impairment has substantially impaired his ability to obtain employment in the Cincinnati, Ohio region.

Taylor argues that his medical history establishes "a record of physical impairment" that "substantially limits one or more major life activities." *Id.* Specifically, Taylor points to his knee and back operations and the lengthy recovery periods he suffered before returning to normal physical functioning. *Id.* He further argues that his back injury clearly falls within the definition of "handicapped" enunciated in *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987). *Id.* at 36. The word

"handicapped," contends Taylor, "is not limited to 'traditional handicaps.'" *Id.* (citing *Arline*, 107 S.Ct. at 1227 n. 5). These contentions lack merit.

■ Although Taylor was hospitalized for surgery and experienced a lengthy period of recovery prior to his application for the distribution clerk position, *supra*, pp. 884–885, his medical history does not automatically establish that he is a handicapped person within the meaning of the Rehabilitation Act. This is so because the reasoning that underlies the "record of . . ., impairment" definition in § 706(8)(B)(ii) does not support Taylor's argument that he is a handicapped person. Congress added the record of impairment section to the Rehabilitation Act in order to prevent "society's accumulated myths and fears about disability and disease" from being the basis of denying employment. *Arline*, 107 S.Ct at 1129. The Rehabilitation Act is therefore designed to protect individuals who suffer from either infectious disease or noninfectious disease since employment is often denied to such persons on the basis of irrational fears or prejudice "that make it difficult for [them] to secure employment." *Id.* at 1129 n. 13 (quoting Senator Humphrey 123 Cong.Rec. 13515 (1977)). Taylor has not shown that his medical history reveals a physical impairment that triggers the concerns underlying the "record of . . ., impairment" definition. The fact that he underwent surgery for his back and knee does not produce irrational fears or prejudice in the manner of an infectious disease, such as AIDS, *see e.g., Doe v. Dolton Elementary School No. 148*, 694 F.Supp. at 440, or physical impairments, such as legal blindness, *see e.g., Norcross v. Sneed*, 755 F.2d 113 (8th Cir.1985). The nature of Taylor's physical impairment is, therefore, of a different type and a lesser degree of severity than the physical impairments that have been considered to bring other plaintiffs within the definition of a handicapped person. *See e.g., Sisson v. Helms*, 751 F.2d 991 (9th Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985) (plaintiff suffered from anklylosing spondylitis, which restricted his movement of his spine,

knees, elbows, and wrists); *Holly v. City of Naperville*, 603 F.Supp. 220 (N.D.Ill. 1985) (plaintiff blind in one eye); *Coley v. Secretary of Army*, 689 F.Supp 519 (D.Md. 1987) (Osteoarthritis in left hip prevented plaintiff from performing any manual labor); *Guinn v. Bolger*, 598 F.Supp. 196 (D.D.C.1984) (plaintiff suffered permanent osteoarthritis); *Longoria v. Harris*, 554 F.Supp. 102 (S.D.Tex.1982) (plaintiff's right leg amputated below knee). Accordingly, Taylor's medical history does not establish that he is a handicapped person.

Finally Taylor contends that defendants regarded him as having a physical impairment that substantially limits a major life activity. *Id.* This is shown by the numerous restrictions that defendants' Chief Medical Officer attributed to Taylor. Taylor argues that because of these restrictions he has been denied access to entry level jobs at the Post Office. *Id.* He alleges that the only physical limitations he had at the time he was not hired by defendants was his inability to walk for long periods of time while carrying heavy loads. *Id.* at 36–37. These contentions lack merit.

■ Dr. Christensen testified that his decision regarding Taylor's unsuitability for the distribution clerk position was based solely on Taylor's inability to perform that particular job. Richard Gargana testified that he rejected Taylor because of Dr. Christensen's recommendation that Taylor was not physically capable of performing the distribution clerk job. Since an employer may reject a job candidate on the basis of his inability to perform one particular job, without regarding that candidate as being handicapped, *Jasany*, 755 F.2d at 1248–49, and since the trial testimony established that the decision to reject Taylor was based on the conclusion that he could not perform the job of distribution clerk, Taylor has not established that defendant regarded him as being handicapped. *See id.* at 1248. The fact that Dr. Christensen referred to Taylor's knee and back problems in his letter to Gargana, *supra*, p. 885, does not establish that either Dr. Christensen or Gargana treated Taylor as handicapped because Dr. Christensen's conclu-

**890**

sion was that Taylor could not perform the particular job of distribution clerk. Although Taylor attempts to distinguish *Jasany*, by arguing that "his major life activities have been much more seriously compromised than the plaintiff in *Jasany*," Doc. 40, p. 37, Taylor's own testimony failed to establish that his physical impairment substantially affected any of his major life activities. As a result, Taylor's attempt to distinguish Jasany fails.

Accordingly, Taylor has failed to establish that he is a "handicapped person" within the meaning of the handicapped Rehabilitation Act.

It is therefore ORDERED that judgment be entered for defendants.