REVISED MAY 26, 1999

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

No. 97-41565

---

GENE A. BURCH,

Plaintiff-Appellant,

versus

CITY OF NACOGDOCHES,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas

---

May 10, 1999

Before GARWOOD, BARKSDALE, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This federal question case comes to us after the district court granted summary judgment in favor of Defendant-Appellee City of Nacogdoches[1] ("City") on a claim brought by Plaintiff-Appellant Gene A. Burch ("Burch") of employment discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 (1998) ("ADA"), and under Texas state law. While fighting a fire, Burch risked his own life to save a co-worker and suffered significant injury doing so. Since the case

---

[1] For purposes of this opinion, references to "the City" include the Nacogdoches Fire Department.

ultimately concerns the City's decision to terminate rather than to reassign Burch after his injury made it impossible for him to continue his duties as an active firefighter, we examine the summary judgment record carefully.

The district court determined that the City had no duty to reassign Burch or to create a job for him when he was no longer able to perform the essential functions of his job. The court also determined that Burch's state-law claims failed as a matter of law. Based on the factual record presented to us, we agree with the district court that the City had no duty to create a position for Burch either within or outside the Fire Department and that the Texas law claims were properly handled on summary judgment. After our *de novo* review of the record, we conclude that Burch failed to carry his burden of demonstrating that the City discriminated against him because of his disability. We therefore affirm the judgment of the district court granting summary judgment to the City.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Burch was initially employed as a firefighter by the City in 1969. On December 5, 1993, while rescuing a co-worker trapped in the attic of a burning house, then-Lieutenant Burch fell through a burning and collapsing floor. Burch fell on his back onto a cement garage floor with the co-worker on top of him; although the other firefighter was not injured, Burch suffered a severe lower back injury. This was Burch's third injury to his back; he had also injured it in 1978 and in 1985 while playing baseball with his family. Although Burch was released back to work on light duty in late December 1993 and attempted to work with his injury, he was unable to do so without significant pain; therefore, he began receiving workers' compensation medical benefits under the City's plan on

2

January 13, 1994.[2] After again attempting to work in pain, in March 1994 Burch underwent a back fusion surgery, performed by Dr. Floyd Robinson ("Dr. Robinson"). Burch was placed on leave while he recovered from the surgery.

On December 27, 1994, Robinson responded to a December 21 letter from Fire Chief Fred Green ("Green") inquiring about Burch's status by stating that Burch would likely never be released to resume the usual duties of firefighter (including lifting, bending, and other physical labor) and that it was Robinson's belief that Burch intended to retire from the Fire Department. Although the City had asked Robinson what (light-duty) jobs Burch could perform, Robinson did not address that issue in his response and, indeed, never explained what tasks he believed Burch could perform. While the City never asked Burch himself what jobs he could undertake, Burch never followed up with Dr. Robinson to determine his light-duty status.

Around the time of this correspondence, Burch informed Green that his doctor had released him for light-duty work. Burch then met with the City's Director of Human Resources, Jerry Cessna ("Cessna"), pursuant to Green's recommendation. At this meeting, which Burch urges took place in December 1994, Cessna suggested to Burch that he retire, but Burch replied that he was not ready for retirement and would work in any capacity for the City. Burch then talked to Dave Magnis ("Magnis"), a Dallas workers' compensation insurance representative, who urged Burch to return to work in order to reduce the City's payment of workers' compensation benefits to him.[3] For the first three quarters of 1995, Burch continued to recover from the injury and surgery, but he was never

---

[2] Burch claims that he did not initially file a workers' compensation claim because there was a "negative attitude within the City toward filing" them. In his deposition, Burch testified that the City, however, filed the claim on his behalf.

[3] The Assistant Fire Marshal apparently had a similar conversation with Burch.

offered reassignment by the City, notwithstanding his expression to the City that he desired to continue working for it.[4]

In the approximately two months before his termination, Green (Burch's supervisor) and Cessna did review, however, potential position vacancies for Burch both within the fire department and in other city offices, although the City contends that Burch never specifically asked about the availability of light-duty jobs anywhere else in the City. Burch was not given a temporary light-duty position in the fire department at this time because Green and Cessna were awaiting Burch's clearance for such work.[5] In the past, other firefighters had been given light-duty positions because they had been released for such work, and Green and Cessna indicated that they would have made similar inquiries for Burch had he been officially released.[6] Again in September 1995, Burch alleges that he requested re-assignment to any vacancy in the City, and Cessna promised to alert him to any

---

[4] There is some dispute over when Burch reached "maximum medical improvement." Dr. Robinson thought he had made all the progress of which he was capable in May 1995, although another doctor believed that he was still short of this goal on July 17, 1995. The court below found that Burch had reached maximum medical improvement as of March 1994. For purposes of this opinion, the actual date of Burch's maximum medical improvement is irrelevant, since we look instead to his ability to perform light-duty work.

[5] Although Burch claims in his brief that he was officially released for light-duty work in August 1995 in a letter from Magnis, the City's workers' compensation liaison, his original complaint stated that he was not officially released until November 1995, and he never amended it to say otherwise. Since Burch is bound by his pleadings, we find that the official release for Burch to return to light duty arrived only after Burch's termination.

[6] Burch asserts—without offering any proof whatsoever—that the ostensible reason for these reassignments was that the City had a widely-known practice of giving workers injured on the job other jobs rather than allowing them to collect workers' compensation benefits, perhaps because of an increase in insurance premiums for workers drawing benefits. As with much of Burch's statement of facts, we cannot give weight to unsupported assertions which have no indicia of reliability.

positions for which Burch was qualified, but Burch offers no proof that he ever demonstrated to the City which jobs (if any) he was physically able to perform.[7]

Cessna testified that only two positions were vacant in the City during the period July-September 27—backhoe operator and laborer—and that the City met with Burch, discussed those positions, and determined that he could not perform them. At this point, the City did not revisit the issue of Burch's capabilities with Dr. Robinson because the two positions were definitionally outside the physical limitations that Robinson had permanently placed on Burch in his earlier letter. Burch, however, contends that seven positions were available and that, in October, an eighth became available, but Burch neither (1) made any inquiry with Dr. Robinson about his ability to perform in these positions nor (2) demonstrated to the City that he had the aptitude or the physical ability to take on any of these positions.[8] In any event, at a discussion on September 27, the City informed Burch, 20 months after the injury, that he would be terminated effective October 15 and that he would not be offered further employment with the City. Burch was informed that this was because he had not received a full work release, but the City made no effort to determine if Robinson believed that Burch could perform any of the available jobs. At this time, Burch was still receiving workers' compensation benefits, and Magnis was at the meeting to inform Burch what his benefits would be after discharge. Although it is not contested that Burch was physically unable to serve as a firefighter, the City subsequently filled Burch's Lieutenant position in the Fire Department on November 1, 1995

---

[7] The City only admits that it invited Burch to apply for any future jobs that he might physically be able to perform.

[8] The City does not acknowledge that there were any light-duty positions available at all at the time of Burch's termination.

5

in order to bring the Fire Department to full capacity and to eliminate overtime work. Burch subsequently went to work as a jailer for the county sheriff's department.

On June 28, 1996, Burch filed suit. He alleged violations of the ADA and the anti-retaliation provisions of the Texas Workers' Compensation Act, TEX. LABOR CODE ANN. § 451.001 (Vernon 1996). Burch submitted that he was discriminated against on account of his disability because the City did not offer him a light-duty position, and that the City was motivated to fire him because he filed a workers' compensation claim. The parties filed disclosures and conducted discovery in the case. On August 30, 1997, the City filed a motion for summary judgment which was granted on September 3. Following a flurry of post-judgment motions and reconsideration by the district court, final judgment was entered against Burch on November 25, 1997. Burch's timely appeal to this court was filed on December 19, 1997.

## II. DISCUSSION

After reviewing the record before us and evaluating the applicable law, we conclude that the district court's grant of summary judgment in favor of the City should be affirmed.

## A. Standard of Review

We exercise *de novo* review of a district court's granting of summary judgment. See J&B Entertainment, Inc. v. City of Jackson, 152 F.3d 362, 365 (5th Cir. 1998). Summary judgment shall be entered in favor of the moving party if the record, taken as a whole, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (holding that the moving party must demonstrate that there is no genuine issue of material fact as to any element of the claim). A factual dispute is "genuine" where a reasonable jury could return a

6

verdict for the nonmoving party.  See Crowe v. Henry, 115 F.3d 294, 296 (5th Cir. 1997); see also

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (holding that a material fact is one that

might affect the outcome of the case under the governing law).  If the record, taken as a whole, could

not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for

trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 547, 597 (1986).  All doubts

shall be resolved in favor of the nonmoving party, and any reasonable inferences shall also be drawn

in favor of that party.  See Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998).

**B.      The Applicability of the ADA**

The governing premise of the ADA is that "[n]o covered entity shall discriminate against a

qualified individual with a disability because of the disability of such individual in regard to . . .

discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C.

§ 12112(a).  Discrimination under the ADA occurs where a plaintiff proves that (1) he has a

"disability;" (2) he is a "qualified individual" for the job in question; and (3) an adverse employment

decision was made because of his disability.  See id.; Robertson v. Neuromedical Center, 161 F.3d

292, 294 (5th Cir. 1998) (per curiam).  If Burch demonstrated all three prongs of this test, then the

employer would be required to "mak[e] reasonable accommodations to the known physical or mental

limitations" of the individual to avoid entry of judgment against it.  42 U.S.C. § 12112(b)(5)(A).  The

employer may avoid making reasonable accommodation by "demonstrat[ing] that the accommodation

would impose an undue hardship on the operation of the business of such covered entity."  Id.   In

the case at bar, Burch's claims were dismissed upon a motion for summary judgment.  The district

court determined that Burch had not produced enough evidence to prove the *prima facie* case at trial;

in a case such as this, the burden never shifts to the employer to show an undue hardship.  Because

7

we agree with the district court's conclusion, we will address the case as one involving principally summary judgment issues of proof, and not ADA issues of reasonable accommodation and burden-shifting.

**1.     Burch Is Not a "Qualified Individual" For the Position of Firefighter Under the ADA**

The district court determined that Burch had failed to prove as a matter of law that he was a "qualified individual with a disability" for the job of firefighter. The court held that Burch could not perform the essential functions of his job, even with an accommodation. See 42 U.S.C. § 12111(8). The law in this area is crystal clear: an otherwise qualified person is "one who is able to meet all of the program's requirements in spite of his handicap." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996) (per curiam) (quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993)). To avoid summary judgment, Burch needed to show that

> (1) he could perform the essential functions of the job in spite of his disability, or
> (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job.

Turco, 101 F.3d at 1093.

It is uncontested that Burch could not meet the essential physical demands of his job as a firefighter "in spite of his disability."[9] Indeed, given the physical demands of being a firefighter, and

---

[9] Regulations accompanying the ADA provide that

A job function may be considered essential for any of several reasons, including but not limited to the following:
(i) . . . because the reason the position exists is to perform that function;
(ii) . . . because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
(iii) [t]he function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform that particular function.

29 C.F.R. § 1630.2(n)(2). Burch wisely avoids arguing that lifting and carrying are not essential

8

the fact that his treating physician indicated that he could never be released to perform those duties again, there is no question that Burch does not meet the first prong of the Turco test. Burch contends that with a reasonable accommodation, he could have met the requirements, and that reasonable accommodation included the creation of a job for him or the transfer to another department in the City.

**2.    The City Was Not Obligated To Create A Position Within the Fire Department For Burch**

After reviewing the record, we conclude that no "reasonable accommodation" was available which would have allowed Burch to perform the essential duties of a firefighter. The ADA defines "reasonable accommodation" as

> (A) making existing facilities used by employees readily accessible to and usable by persons with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). Where an accommodation is not available, Texas law permits an employer to terminate a disabled employee where it appears that, ultimately, due to the nature of the injury, the employee can no longer perform the essential functions of the job. See Burfield v. Brown, Moore & Flint, Inc., 51 F.3d 583, 590 (5th Cir. 1995).

Burch asserts that the City should and could have accommodated him by providing him with a light-duty job. This court has, however, established that "[f]or the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." Foreman v.

---

functions of being a firefighter. This is particularly so given the paucity of resources and individuals employed by the Nacogdoches Fire Department.

Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir. 1997). The City laments that, because of the small size of the Fire Department, it has no permanent light-duty positions. All firefighters must be able to perform the tasks of firefighter. Among those tasks are the ability to lift and carry heavy objects and to stoop and bend frequently.

The ADA permits job requirements that are job-related and consistent with business necessity. See 42 U.S.C. § 12113(a). Although the Act itself does not define what those requirements are exactly, the Equal Employment Opportunity Commission's regulations allow functions to be defined as "essential" because, *inter alia*, "the reason the position exists is to perform that function; [and] . . . because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2). Burch cannot, as mentioned above, perform the essential functions of a firefighter.

Burch complains, nevertheless, that the district court devoted scant attention to the "job restructuring" aspect of the ADA's reasonable accommodation system. See 42 U.S.C. § 12111(9)(B). Burch alleges that the City has allowed injured firefighters to assume light-duty positions in the past or to be transferred to other positions in the City, thereby restructuring their jobs.[10] The City, however, counters that it has never in the past allowed an injured firefighter to assume *permanent* light-duty work, and it draws support for this practice from the fact that the ADA does not require an employer to create a new job category for the disabled worker or to adjust co-workers' duties to make them work longer or harder. See Turco, 101 F.3d at 1094.

_____

[10] As we will discuss *infra*, Burch's allegations are merely that—allegations. He never offers proof that the City had such a policy, a failure which, *inter alia*, ultimately leads to our conclusion that summary judgment was appropriately granted in favor of the City.

Burch's first proposal—that he be allowed to chauffeur the fire trucks but not be required to fight fires—would violate the essential functions of the job of firefighter in that every firefighter is expected to fight fires under the City's policy. In addition, were we to allow Burch to remain in the department—even as a chauffeur—we would put him in the position of potentially posing a direct threat to his co-workers because of his inability to bend, carry, or pull someone in an emergency, something that the ADA does not require employers to do in order reasonably to accommodate. See 42 U.S.C. § 12113(b); Robertson, 161 F.3d at 296.

The City concluded, and we agree, that it had no duty to continue employment of Burch as a firefighter. The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so. See Robertson, 161 F.3d at 295; Barber v. Nabors Drilling U.S.A., Inc., 130 F.3d 702, 709 (5th Cir. 1997). Since one of the essential duties of any firefighter is to fight fires, if Burch cannot perform that duty, then he cannot be reasonably accommodated as a matter of law. See Robertson, 161 F.3d at 295.

**3.     The City Was Not Required To Accommodate Burch Through Reassignment To a Vacant Position Because Burch Offers No Proof That He Was Qualified For Such a Position**

Burch's second proposal is that he should have been reassigned to a different position in the City. Although the City contends that Burch never expressed any interest in light-duty work until he was discharged, and he did not express any interest in the two jobs that were open at the time of his discharge, construing the facts in the light most favorable to Burch, see Deas v. River West, L.P., 152 F.3d 471, 475 (5th Cir. 1998), Burch contends that he made it clear at several junctures in 1995 that he did not want to retire, that he wanted to continue working for the City, and that several vacant

11

jobs were available for which Burch would have been qualified. The sticking point in Burch's case is that he does not offer any proof to support his contentions. He makes a logical leap between asserting that the City knew he did not want to retire and maintaining that he should have been reassigned to available jobs in other sectors. Notwithstanding the misfortune of Burch's plight, we will not attribute extra-sensory perception to the City: the record does not offer a single example of Burch's asking the City to transfer him to a specific light-duty job, or even implying that he wanted one.[11] Under the facts as presented to us, we cannot see how the City was expected to *know* Burch's wishes absent his telling them. It is too much of a stretch for us to hold for summary judgment purposes that Burch wanted an accommodation, simply because, in retrospect, he concedes that he could not perform the duties of an actual firefighter any longer but still wanted employment.[12]

Even if Burch had clearly demonstrated to the City and to us his desire to be reassigned to a particular job, the law requires him also to prove that he is qualified for that position. Part of that proof must be more than the worker's self-serving testimony that he could have performed light-duty jobs from a physical standpoint. Consequently, Burch's case, weak already due to its lack of any indicia of his desire to be reassigned, is decimated by Dr. Robinson's testimony and Burch's inability

---

[11] Burch's most persuasive contention, that the City gave light-duty positions to other injured firefighters, was potentially a winning argument. Had he shown that the City treated him differently from others similarly situated by not reassigning him under identical conditions, his position on appeal would have been much stronger. Burch does not, however, ever develop this argument; he merely offers an unsupported assertion, accompanied by no summary judgment evidence of any kind, to bolster his complaint. Construing the facts in the light most favorable to Burch does not require us to credit otherwise unsupported assertions. His efforts are insufficient for purposes of summary judgment analysis.

[12] The factual dispute over how many jobs were available at the time is a central issue to the case on appeal. Furthermore, even if the City "invited" Burch to apply for a job at a later time, this cannot be seen as an accommodation to Burch (and the City wisely does not cast it as such) because the interim effect would still have been his discharge from employment.

12

to overcome the fact that his own doctor never released him for light-duty work. We find it instructive that Dr. Robinson never released Burch for light-duty work.[13] The absence of this release undercuts Burch's case from an *evidentiary* perspective because Burch has offered nothing other than his own assertions to rebut the City's contentions that it did not discriminate against him. At his deposition, Dr. Robinson admitted that he could not remember ever telling Burch or anyone at the City that Burch was capable of any sort of light-duty work before the City terminated Burch. Burch attempts to deflect from our attention the impact of this testimony by arguing that the City nevertheless behaved as if it believed that Burch could perform light-duty work because the City admits that it looked for other jobs for Burch between July and September 1995. We conclude, given the paucity of support for Burch's position, that the City was not required by the ADA even to take this small step; whether the City believed Burch to be capable of light-duty work is irrelevant to our analysis because Burch himself never agreed to or even requested a reassignment to a particular position during this time period. Burch never requested clearance from his treating physician for any prospective jobs. The City did everything the law required and did not discriminate against Burch because of his disability.

We note, however, that the City's contention that only two jobs were available between July and September 1995 is not entirely supported by the record. In the court below, the Defendant's Supplemental Disclosure confirms Burch's assertion identifying eight positions as having been filled

---

[13] Of course, Burch insists that he informed the City's representatives as early as December 1994 that he was able to return to work and that his doctor had told him that he could, but, again, he offers no proof that this was actually the case.

between July and September 1995.[14] Nonetheless, Burch's submission of this evidence fails to prove that he passed the initial threshold of demonstrating that he was qualified for any of these jobs. While it is true that the City apparently did not consider Burch's qualifications (it simply terminated him without giving him the chance to move into any position for which he might have been qualified),[15] we can only observe that the burden was not on the City to undertake such an exercise. For purposes of the summary judgment motion before us, Burch at all times had the responsibility of demonstrating that he was qualified for a position, that the City knew of his interest, and that he was denied the job because of his disability. He failed in all regards.

Because Burch did not offer proof that he was qualified for transfer, or even that he said he wanted to be transferred, and because Burch's own doctor could not even recall releasing him for such work, we cannot expect the City to have done any more than it did in attempting to work with Burch through his injury. Consequently, we affirm the district court's judgment with regard to Burch's ADA claims.

## C. Discharge in Violation of the Texas Labor Code

Burch also claims that he was discharged because he filed a workers' compensation claim. See TEX. LABOR CODE ANN. § 451.001(1) (Vernon 1996). To recover under this section, an employee must show that the discharge would not have occurred when it did but for the employee's

---

[14] These positions were Engineering Technician, Court Clerk, Semi-Skilled Laborer, Office Assistant I, Patrolman, Street Equipment Operator I, Sanitation Laborer, and Animal Shelter Supervisor.

[15] We note in passing that, construing the evidence in the light most favorable to Burch, the non-movant at summary judgment, if he in fact told Cessna and Green in December 1994 that he was clear to return to light-duty work, as he contends, another 38 jobs were open during those intervening seven months, including a number for which, at least on their face, Burch would have been qualified.

14

assertion of a compensation claim. See Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). Again, Burch contends, without providing evidence to support his allegation, that he filed his own workers' compensation claim; it is apparently the case that the City, not Burch, filed the claim. It would seem highly irregular, to say the least, if the City then determined to terminate Burch for filing a claim when the City itself had filed it.

In addition, 20 months passed between the time the claim was filed and the time Burch was discharged. In Burfield, we held that 15-16 months between the claim and discharge "militates against a finding of retaliation." 51 F.3d at 590. Although this presumption is rebuttable, Burch has offered no evidence that retaliation for filing the claim was actually the City's motivation. Since retaliation *for filing* is all that the Texas statute protects, see id. at 589, Burch's other contentions—that the City terminated him for not getting along with Magnis or because of the light-duty work dispute—do not support a finding under the Texas statute that Burch was terminated illegally. In addition, Burch's general conclusion that the City disapproved of workers' compensation claims does not support his charge, since a worker's subjective impressions—in the absence of competent evidence of retaliation—will not support a finding of relief under this statute.[16] See Texas Division-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994).

We therefore conclude that summary judgment was appropriately granted on this issue and affirm the district court's holding with respect to Burch's state-law claim.

III. CONCLUSION

---

[16] Burch adverts to Munoz v. H&M Wholesale, Inc., 926 F. Supp. 596 (S.D. Tex. 1996), in which the court found an issue of fact to exist over the filing of a workers' compensation claim, but that case was strictly about the *filing* of a claim (the plaintiff was terminated less than a month after his injury), and not the plaintiff's subjective impressions regarding actions that occurred many months after the claim was filed.

We conclude that the court below correctly determined that the City had no duty to accommodate Burch within the Fire Department, was not required to reassign Burch because Burch never proved that he wanted reassignment or that he was qualified for such, and did not discriminate against Burch under Texas law.  We thus affirm the judgment of the district court.

AFFIRMED.