IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-40201
Summary Calendar
_____

ORRIS T. DANIELS,

Plaintiff-Appellant

v.

LOUIS CALDERA, In his official title and capacity as
Secretary of the Army, Department of the Army,

Defendant-Appellee

_____

Appeal from the United States District Court
for the Eastern District of Texas, Texarkana Division
USDC No. 5:97-CV-102
_____

October 26, 2000

Before KING, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Orris T. Daniels ("Daniels") appeals

from the district court's entry of a final judgment of dismissal

with prejudice. For the following reasons, we affirm.


I. FACTUAL AND PROCEDURAL BACKGROUND

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Daniels, a black male, began working for the Red River Army Depot (RRAD) in August 1969. He became a GS-07 Computer Assistant in June 1984 and was assigned to the Directorate of Information Management (DOIM). On September 1984, Mary Ann Clarke ("Clarke"), a white female who joined RRAD in 1976, also became a GS-07 Computer Assistant in DOIM. After receiving her two noncompetitive promotions in 1989 and 1991, Clarke is now employed at a GS-11 level.

On May 28, 1993, Daniels filed his first formal complaint with an Equal Employment Opportunity Counselor at RRAD ("First EEO Complaint"). He alleged racial discrimination based primarily on preferential treatment of a white male, Michael A. "Toni" Sheridan ("Sheridan"), denial of training, denial of overtime, denial of a temporary promotion, and Clarke's two non-competitive promotions. EEO Officer Charlean Carroll ("Carroll") processed this complaint and listed the claims accepted for investigation, which did not include claims regarding Clarke's promotions. Daniels did not contest the issues as framed.[1] Ultimately, Daniels prevailed on the investigated issues.

Next, on June 30, 1994, Daniels filed another formal complaint with the EEO office at RRAD ("Second EEO Complaint"). In this complaint, he alleged discrimination stemming from

---

[1] Carroll informed Daniels that he had fifteen days to object in writing as to the issues accepted for investigation. Daniels did not object within the fifteen days or thereafter raise the argument until February 2, 1994.

2

Clarke's 1989 and 1991 promotions, Carroll's handling of his First EEO Complaint with regard to those promotions, and Carroll's non-processing of an informal complaint filed in November 1993. On October 1, 1996, the Army issued a final decision in which it ruled that Daniels had failed to demonstrate by a preponderance of the evidence that he was a victim of discrimination.

Shortly thereafter, Daniels filed this action in district court.[2] On February 5, 1999, Daniels filed a motion for a jury trial pursuant to the Civil Rights Act of 1991. The district court denied the motion on the grounds that Clarke's promotions occurred before the effective date of the Act and that improper processing of a complaint did not state a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"). Subsequently, the Army moved to dismiss or, in the alternative, for summary judgment. The district court granted summary judgment in favor of the Army on Daniels's improper processing claim, but denied summary judgment as to the remainder of Daniels's claims. Next, the Army moved for a separate trial on whether Daniels timely filed his Second EEO Complaint. Following a bench trial, the district court entered Findings of Fact and Conclusions of Law

[2] Daniels filed suit in the United States District Court for the Western District of Arkansas, Texarkana Division. The case was eventually transferred to the Eastern District of Texas, Texarkana Division, and subsequently, both parties voluntarily consented to have a United States magistrate judge conduct any and all future proceedings.

that Daniels knew or should have known of Clarke's promotions as they occurred. Thus, equitable tolling did not apply, and Daniels's failure to initiate EEO procedures within the prescribed time limits resulted in a dismissal of Daniels's suit with prejudice.

Daniels timely appeals from the final judgment of dismissal and the underlying final orders of the district court.

## II. DISCUSSION

Daniels alleges three points of error on appeal: (1) that the denial of a jury trial was improper, (2) that a cause of action for "improper processing of a complaint" does exist under Title VII, and (3) that the Army is barred from asserting its timeliness defense. We consider Daniels's second point of error at the outset. Then, we proceed to examine his first and third points of error.

### A. "Improper Processing of Complaint" Claim

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. See Burch v. City of Nacogdoches, 174 F.3d 615, 618 (5th Cir. 1999). If the moving party is able to demonstrate that the non-moving party lacks evidence sufficient to create a genuine issue of fact in support of a necessary element of his claim, then summary judgment is appropriate against the non-moving party on that claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-

4

23 (1986); Hypes v. First Commerce Corp., 134 F.3d 721, 725 (5th Cir. 1998). Doubts are to be resolved in favor of the non-moving party, and any reasonable inferences are to be drawn in favor of that party. See Burch, 174 F.3d at 619.

In order to survive a motion for summary judgment on his Title VII claim, Daniels is required to establish, at a minimum, a prima facie case by a preponderance of the evidence. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999); Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2109 (2000) (finding that appropriateness of judgment as a matter of law depends on several factors, including strength of plaintiff's prima facie case). For a discrimination claim, a showing of the following four elements is required: (1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the position; (3) the plaintiff was subjected to an adverse employment action; and (4) the plaintiff was replaced by someone outside the protected class. See Shackelford, 190 F.3d at 404. To make out a prima facie case under a retaliation claim, the plaintiff must establish: (1) that he was engaged in a protected activity, (2) that he was subjected to an adverse employment action, and (3) that a causal connection existed between his participation in the protected activity and the adverse employment action. See Dollis v. Rubin, 77 F.3d 777, 781 (5th Cir. 1995).

Daniels argues that Carroll improperly processed his claim

5

as to Clarke's promotions in the First EEO Complaint[3] and was motivated by racial animus[4] in handling an informal complaint filed in November 1993.  A threshold inquiry is whether alleged mishandling of an EEO complaint comes under the rubric of an "adverse employment action."  The law on this issue is well-settled in the context of retaliation claims.  We have consistently held that an "ultimate employment decision" is a necessary predicate for a Title VII retaliation cause of action. See Burger v. Central Apartment Mgmt., Inc., 168 F.3d 875, 878 (5th Cir. 1999) (citing Dollis, 77 F.3d at 781-82); see also Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997) (interlocutory or mediate decisions that can lead to ultimate decisions fall outside of Title VII) (citing Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981)).

After carefully examining the record, we are unclear whether Daniels is alleging a discrimination claim or a retaliation

---

[3] We note that Carroll's response letter to Daniels states that Daniels had fifteen days in which to contest the issues as framed.  Daniels did not do so until February 2, 1994 (240 days later).  We also note that EEO Counselor Mary T. Green's final report states that Carroll should have explicitly listed the issues claimed by Daniels and should have accepted or dismissed each issue individually.

[4] Daniels alleges racial animus in his brief, whereas in his Complaint, he appears to have alleged gender animus: Carroll, a black female, accepted untimely claims from black females and did not do so for Daniels, a black male.

6

claim.[5]  If it is the latter, Daniels cannot prevail as it would

take a string of hypotheticals to connect a possible mishandling

of a complaint to a promotion similar to the ones received by

Clarke.  See Mattern, 104 F.3d at 708 (stating that "mere

tangential effect on a possible future ultimate employment

decision" falls short of the adverse employment action

requirement).

If, on the other hand, Daniels is alleging a discrimination

claim, the matter is more complicated.  There is some indication

that the "adverse employment action" requirements of

discrimination and retaliation claims encompass different

criteria.  In Mattern, we noted that the anti-retaliation

provision of Title VII, 42 U.S.C. § 2000e-3 (1994), did not

contain the vague harms mentioned in the discrimination

provision, 42 U.S.C. § 2000e-2(a)(2) (1994).  See 104 F.3d at

708-09.  Thus, we stated that "the way in which the employee may

be affected in . . . [the discrimination] subpart is much

broad[,]" reaching activity that "would tend to [adversely]

affect the employee."  Id. at 709 (internal quotation marks and

citations omitted).  In a recent decision, we recognized, but did

not decide, the issue left open in Mattern.  See Shackelford, 10

F.3d at 406-07 (concluding that the plaintiff loses under either

---

[5] In their briefs, both the Army and Daniels discuss the issue citing Fifth Circuit precedent that dealt with retaliation claims.  However, Daniels's description of the basis of this claim indicates that it is a discrimination claim.

approach); see also Burger, 168 F.3d at 878-79.

However, we do not need to delineate today the contours of the "adverse employment action" requirement of Title VII discrimination claims. We are able to resolve the specific issue presented in this case (whether Daniels's "improper complaint processing" claim states a valid claim under Title VII) without having to answer that broader question. We have decided the "improper complaint processing" issue in an analogous context, and we see no reason to adopt a different approach here.

Just as federal employees must first file their complaints with the EEO division of their employer federal agency, 29 C.F.R. §§ 1614.105-.106 (1999), private sector employees must initiate the process with the Equal Employment Opportunity Commission (EEOC), 42 U.S.C. § 2000e-5(b) (1988). In Gibson v. Missouri Pacific Railroad Co., we held that "Title VII . . . confers no right of action against the [EEOC]" for improper investigation or processing of an employment discrimination charge. 579 F.2d 890, 891 (5th Cir. 1978); see also Baba v. Japan Travel Bureau Int'l., Inc., 111 F.3d 2, 6 (2d Cir. 1997) (citing Gibson and cases from other circuits for support).

There is no compelling justification to confer upon federal employee plaintiffs an "improper complaint processing" cause of action under Title VII, when that very claim has been repeatedly withheld from private employee plaintiffs. The Seventh Circuit recently followed a similar approach in ruling, in the context of

8

a Title VII claim by an employee of the United States Customs Service, that a "failure-to-process claim does not state a claim upon which relief can be granted" under a Title VII action. Jordan v. Summers, 205 F.3d 337, 342 (7th Cir. 2000). Thus, since Daniels does not state a claim upon which relief can be granted, summary judgment for the Army on this point was proper.[6]

## B. Denial of a Jury Trial

Whether Daniels has a right to a jury trial presents a pure question of law. Questions of law are reviewed de novo by this court. See Arnold v. United States Dep't of the Interior, 213 F.3d 193, 195 (5th Cir. 2000) (citing Randel v. United States Dep't of the Navy, 157 F.3d 392, 395 (5th Cir. 1998)).

The Civil Rights Act of 1991 ("1991 Act") grants parties seeking compensatory and punitive damages in Title VII intentional discrimination claims the right to a trial by jury. See 42 U.S.C. § 1981a(c) (1994). The effective date of the 1991 Act is November 21, 1991. See 42 U.S.C. § 1981a. The Supreme Court has held that the 1991 Act does not apply retroactively, and thus there is no right to a jury trial for conduct occurring before November 21, 1991. See Landgraf v. USI Film Prods., 511 U.S. 244 (1994). As such, Daniels's allegations regarding Clarke's noncompetitive promotions cannot form the basis for a

---

[6] Because we find that mishandling of a complaint does not state a claim under Title VII, we do not need to address Daniels's "common nucleus of operative facts" or "continuing violation theory" arguments.

9

jury demand because there is no question that they transpired before the 1991 Act's effective date.[7]

Daniels's claims regarding Carroll's mishandling of his First EEO Complaint (filed May 28, 1993) and November 1993 informal complaint also do not provide a proper foundation for a jury trial. Although these alleged actions occur well after November 21, 1991, they do not constitute conduct that can be challenged under Title VII, as discussed in the above section. Thus, the district court's ruling denying Daniels's motion for a jury trial was proper.

### C. Timeliness

The district court's decision to bifurcate a trial is reviewed under an abuse of discretion standard. See U.S. v. $9,041,598.68, 163 F.3d 238, 253 (5th Cir. 1998).

Daniels challenges the district court's granting of the Army's Motion for a Separate Trial on the Issue of Timeliness (whether Daniels timely filed his complaint with the Army's EEO department). Daniels argues that the Army should have been barred from raising this timeliness defense because it did not assert the argument during the lengthy administrative process.

Before proceeding to ascertain whether the Army should be prohibited from presenting timeliness as a defense, we pause to

_____

[7] It is undisputed that Clarke's two noncompetitive promotions took place in April 1989 and April 1991. Furthermore, Daniels does not contest this point in his brief.

10

address an issue that could pretermit that determination.  We generally do not consider arguments that were not properly preserved for appellate review.  "Typically, we will not consider on appeal matters not presented to the trial court.  Rather, the litigant must raise his argument to such a degree that the district court may rule on it."  Harris County, Tex. v. Carmax Auto Superstores, Inc., 177 F.3d 306, 326 (5th Cir. 1999) (internal citations omitted); see also Hormel v. Helvering, 312 U.S. 552, 556 (1941) ("Ordinarily an appellate court does not give consideration to issues not raised below.").

We will consider an issue that is not raised in the proceedings below only if it "concerns a pure question of law and a refusal to consider it would result in a miscarriage of justice."  Volkswagen of America, Inc. v. Robertson, 713 F.2d 1151, 1166 (5th Cir. 1983); Dollis, 77 F.3d at 779 n. 2; see also Hormel, 312 U.S. at 557 ("There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon . . . below.").

After a careful review of the record, we find that Daniels did not raise this argument in the district court when the Army made its motion.  Thus, we will consider it on appeal only if meets the narrow two-pronged exception: legal question and miscarriage of justice.  Whether the Army is barred from

11

asserting its timeliness defense is a purely legal question because there is no factual dispute as to the occurrences in the administrative process. However, our failure to consider this issue would not result in a miscarriage of justice. "Miscarriage of justice" implies, inter alia, something inherently unfair: that appellants could not have known of this issue below, that they were somehow precluded from raising their objections below, or that they should be excused from their failure to raise it below.

In this case, no such compelling arguments are available for Daniels. There is no question that he knew of this issue when the Army first made its Motion for a Separate Trial on the Issue of Timeliness, that he was not precluded from raising his objections at that time, and that there is no justifiable reason to excuse his not raising the issue earlier. Therefore, because Daniels did not properly preserve his objection to the Army's timeliness defense below and because his case does not fall into the extraordinarily narrow exception, we will not consider his third point of error.[8]

---

[8] Even assuming arguendo that the facts compel us to consider this question of law on appeal, Daniels's argument is without merit. The law in this circuit is well-settled as to the facts that will trigger such a bar, and those facts are not present in this case. See Rowe v. Sullivan, 967 F.2d 186, 191 (5th Cir. 1992) ("In order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely."); Munoz v. Aldridge, 894 F.2d 1489, 1494-95 (5th Cir. 1990) (specific finding of timeliness in the administrative process bars timeliness objection in later civil

### III.  CONCLUSION

For the above-stated reasons, we AFFIRM the judgment of the district court.

---

suit); <u>Henderson v. United States Veterans Admin.</u>, 790 F.2d 436, 440-41 (5th Cir. 1986); <u>Oaxaca v. Roscoe</u>, 641 F.2d 386, 390 (5th Cir. 1981) (finding that "merely accepting and investigating a tardy complaint" does not waive a timeliness objection).  Thus, the district court would not have abused its discretion in granting the Army's Motion for a Separate Trial on the Issue of Timeliness.