# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

No. 12-10779
Summary Calendar

March 27, 2013

Lyle W. Cayce
Clerk

REGINA MURRY,

Plaintiff-Appellant,

v.

GENERAL SERVICES ADMINISTRATION; DANIEL M. TANGHERLINI,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
U.S.D.C. No. 4:10-cv-400-Y

Before STEWART, Chief Judge, and KING and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant, Regina Murry appeals the district court's grant of summary judgment to Defendants-Appellees, the General Services Administration ("GSA") and Daniel M. Tangherlini, the Acting Administrator of the GSA. Murry proceeds pro se. For the reasons provided below, we AFFIRM the final judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10779

## I. FACTS

### A.   Background

Murry is a former employee of the GSA.  She suffers from agoraphobia and depression, as well as anxiety, panic, and post-traumatic stress disorders. During the events at issue, Murry largely worked as a supply technician at the GSA's National Forms and Publications Center ("NFPC") in Forth Worth, Texas. Murry's position was classified as GS-5.

At the NFPC, Murry worked from a cubicle within a warehouse, which at times was infested with insects and rodents.  Murry's supervisor was Kay Caise. The two apparently had an adversarial relationship.

During her time at the NFPC, Murry took a considerable amount of leave. For instance, in 1999, Murry took 994.7 hours (or 124.3 days), including annual, sick, donated, and unpaid leave.  In 2000, Murry took 667.7 hours (or 83.5 days), including annual, administrative, and unpaid leave.

In April 2000, Murry requested reassignment on account of the insect and rodent infestation.  In May 2000, Murry again requested reassignment, this time on account "of hostile and unhealthy work conditions" pertaining to both the infestation and her adversarial relationship with Caise.  Also in May 2000, Murry was granted 31 days of leave (the full month) after submitting a letter from her psychiatrist that repeated contact with Caise and the infested work environment had "incapacitated" her.

Murry again requested reassignment in June 2000 and, in July 2000, requested to work from home.  Also in July 2000, Murry requested five additional days of leave.  In support of this request, Murry submitted a doctor's note stating that work in the NFPC warehouse was "not suitable for her continued mental and physical well being."  The GSA did not reassign her.

**B.    Murry's First EEOC Complaint in July 2000**

On July 25, 2000, Murry filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming that the GSA had denied her a reasonable accommodation of reassignment. In addition, Murry asserted a retaliation claim that is not pertinent to this appeal.

After conducting a hearing, the administrative law judge ("ALJ") found that the GSA had searched for an open position suitable for Murry, but had found none. Thus, the ALJ concluded that the GSA had put forth "a legitimate non-discriminatory reason for not reassigning Murry." The GSA issued a final, agency-level decision that the agency had not discriminated against Murry on account of her disability. On administrative appeal, the EEOC's Office of Federal Operations ("OFO") affirmed the GSA's decision.

**C.    Aftermath of Murry's July 2000 Complaint**

On August 1, 2000, the GSA presented a memorandum to Murry stating that there were no available GS-5 positions in the Forth Worth area other than her position at the NFPC. The agency denied Murry's request to work from home because her job required her to operate a computer system that was not accessible remotely, and to perform physical inventory checks at the warehouse. However, to accommodate a new sleeping medication that Murry was taking, which left her groggy in the mornings, the GSA agreed to allow her one hour of unpaid leave every morning. Later, in 2001, the agency agreed to allow Murry two hours of unpaid leave every morning.

In May 2001, the GSA promoted two individuals from GS-4 personnel clerk positions to GS-5 human resources assistant positions to account for those individuals' increased responsibilities.

**D.    Murry's Second EEOC Complaint in May 2002**

On May 10, 2002, Murry filed a second complaint to the EEOC, claiming that the GSA had failed to reassign her to positions that had become vacant

No. 12-10779

after the period covered by her first EEOC complaint—namely, the two human resources assistant positions.  The ALJ again concluded that there had been no discrimination.  The GSA adopted the ALJ's conclusion, and the OFO affirmed.

## II. PROCEEDINGS

Murry filed the instant suit on June 7, 2010, stating a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794.  Murry asserted that the GSA had denied her a reasonable accommodation by denying her requests for reassignment.  Additionally, Murry asserted retaliation and hostile work environment claims.

The GSA moved for summary judgment.  First, the district court determined that Murry's hostile work environment claim failed for failure to exhaust her administrative remedies.  In other words, Murry had never asserted a hostile work environment claim in her two EEOC complaints.  Next, the district court determined that any claims arising out of Murry's first EEOC complaint, in July 2000, were now stale.  In other words, Murry had failed to bring a timely suit in district court after the OFO had affirmed the GSA's denial of her July 2000 complaint.  Thus, the district court only reached the merits of Murry's reassignment claim, and only with respect to the period after her first EEOC complaint.

In assessing the merits of Murry's reassignment claim, the district court applied our conjunctive four-pronged test to establish *prima facie* discrimination on the basis of a covered disability.  *See Washburn v. Harvey,* 504 F.3d 505, 508-09 (5th Cir. 2007) (citations omitted).  The district court determined that Murry could not satisfy the second prong of *Washburn*, that she was "otherwise qualified for the position sought." *Id.* at 508 (alterations, citations, and internal quotation marks omitted).

No. 12-10779

Accordingly, on February 24, 2012, the district court granted the GSA's motion for summary judgment and dismissed Murry's complaint with prejudice. Murry timely appealed.

## III. STANDARD OF REVIEW

"This court reviews a grant of summary judgment *de novo*, applying the same standards as the district court." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (per curiam) (citation omitted).

## IV. DISCUSSION

As noted above, we apply a conjunctive four-pronged test to establish *prima facie* discrimination on the basis of a covered disability. *See Washburn,* 504 F.3d at 508-09 (citations omitted). The second prong of the *Washburn* test is that the plaintiff was "otherwise qualified for the position sought." *Id.* at 508 (alterations, citations, and internal quotation marks omitted).

Here, to satisfy the second prong of *Washburn*, Murry would have had to (i) identify the positions sought; (ii) show that she was qualified for the positions; and (iii) show that she could have performed their "essential functions . . . with no more than a reasonable accommodation." *Id.* at 509 (citations and internal quotation marks omitted). Murry also would have had to (iv) show that the positions were vacant. *Burch v. City of Nacogdoches*, 174 F.3d 615, 620 (5th Cir. 1999) (citation omitted); *see also* 42 U.S.C. § 12111(9)(B).

We apply this second *Washburn* prong to all three positions that Murry might have sought on reassignment: (i) one of the human resources assistant positions; (ii) her own supply technician position, but working from home; and (iii) a suitable alternative GS-5 position in the Fort Worth area. Murry cannot satisfy *Washburn*'s second prong with respect to any of these positions.

First, Murry, a supply technician, cannot show that she was qualified to be a human resources assistant, an altogether different field. Moreover, Murry

5

No. 12-10779

cannot show that one of the human resources assistant positions was even available since those positions came into existence only upon the promotion of the personnel clerks who already occupied them.

Next, Murry cannot show that she could have performed the essential functions of a supply technician from home. As noted above, those functions included the operation of the computer system and the performance of physical inventories, neither of which could have been performed remotely.

Finally, the record does not show that there were any vacant GS-5 positions, similar to that of a supply technician, within the Forth Worth area but in an office other than the NFPC warehouse. Murry points to a "customer assistant" position that the GSA filled on June 18, 2000, after a search that presumably took place while Murry was out on leave in May 2000. However, it would not have been reasonable for the GSA to search for a replacement position until it knew for sure when Murry would be returning from her incapacitation.

Moreover, the customer assistant position was in the very NFPC warehouse from which Murry sought reassignment. While Caise might no longer have been her supervisor, Murry still risked renewed incapacitation from the rodent infestation. Given these facts, Murry cannot show that there was any available position for which she was qualified, and could perform its essential functions without risking renewed incapacitation.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the final judgment of the district court.