# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2023

Lyle W. Cayce
Clerk

No. 22-50135

Robert Cuellar,

*Plaintiff—Appellant*,

*versus*

GEO Group, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-792

Before Dennis, Elrod, and Ho, *Circuit Judges*.
Per Curiam:[*]

Robert Cuellar was employed by GEO Group, Incorporated ("GEO") as a detention officer. During his employment, he developed health problems that ultimately resulted in a sleep apnea diagnosis. Due to his illness, Cuellar requested that he no longer be scheduled for shifts longer than twelve hours, based on his physician's recommendation. GEO denied his request, asserting that working shifts longer than twelve hours constituted an essential function

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50135

of Cuellar's job. Cuellar sued GEO for failure to accommodate and retaliation in violation of Chapter 21 of the Texas Labor Code. He appeals the district court's grant of summary judgment in GEO's favor. Because there is no genuine issue of material fact as to whether Cuellar has established a prima facie case on either of his claims, we AFFIRM.

**I.**

From 2009 to 2018, Cuellar worked as a detention officer at the South Texas Immigration and Customs Enforcement Processing Center, which is owned and operated by GEO Group. One of the requirements for the job of detention officer was to "work overtime as required," including "up to sixteen (16) hours within a rolling 24-hour period." Cuellar would, occasionally, be directed to work ten, twelve, fourteen, or sixteen hour shifts straight in a rolling 24-hour period.

In 2013, Cuellar began experiencing symptoms of disordered sleeping, including daytime sleepiness, insomnia, nightmares, sleep deprivation, and snoring. After submitting to a sleep study, he was diagnosed with severe obstructive sleep apnea. Cuellar informed GEO's human resources administrator, as well as two of the wardens, of his sleep apnea diagnosis and provided them a copy of his sleep study. In 2015, Cuellar filled out a self-identification form, indicating that he had a disability, and returned it to Warden Castro. In 2018, Cuellar twice fell asleep at the wheel of his vehicle after working a 16-hour shift; this resulted once in a collision and once in him veering into oncoming traffic.

On May 15, 2018, Cuellar presented his supervisor and the human resources administrator with a note from his physician, which stated that, as a result of Cuellar's disability, he was medically restricted from working a shift longer than 12 hours and therefore sought an accommodation. On May 23, 2018, GEO placed Cuellar on administrative leave without pay, while

2

No. 22-50135

GEO determined if an accommodation was possible. On June 4, 2018, Cuellar was terminated by GEO. Cuellar filed suit in Texas state court on June 4, 2020, alleging violations of the Texas Labor Code and the Americans with Disabilities Act ("ADA"). GEO removed the case to federal court, and subsequently filed a motion for summary judgment. The district court granted GEO's motion for summary judgment, and Cuellar appeals.

## II.

This court reviews a district court's grant of summary judgment de novo. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 520 (5th Cir. 2021). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. All facts and evidence must be taken in the light most favorable to the non-movant." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 549–50 (5th Cir. 2012) (internal marks and citations omitted). Rule 56 does not require the genuine issue of material fact "to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).

## III.

### A.

Chapter 21 of the Texas Labor Code makes it unlawful for an employer to "fail[] or refuse[] to hire an individual, discharge[] an individual,

3

or discriminate[] in any other manner against an individual" on the basis of disability. TEX. LABOR CODE § 21.051. Because the Texas Labor Code mirrors the ADA, courts use the same framework to evaluate claims arising under either scheme. *Clark v. Champion Nat'l Security, Inc.*, 952 F.3d 570, 578 n.16 (5th Cir. 2020). Here, because Cuellar offers only circumstantial evidence to prove his claim, we apply the *McDonnell Douglas* burden shifting framework. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, an employee must first show a prima facie case of discrimination, and then the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for" the adverse employment action. *Id.* The employee would then need to present evidence that the articulated reason is pretextual. *Id.*

To establish a prima facie discrimination case under the ADA, Cuellar must show that (1) he has a disability, (2) he is qualified for the job of detention officer, and (3) he was subject to an adverse employment decision because of his disability. *Id.* at 695–97. Cuellar argues that the district court erred in its determination that Cuellar failed to establish that he was qualified for the job of detention officer.

To be qualified for the job, Cuellar must have been able to do the essential functions of a detention officer with or without a reasonable accommodation. *See* § 42 U.S.C. § 12111(8). "Essential functions" are "fundamental," as opposed to "marginal," job duties, 29 C.F.R. § 1630.2(n)(l), such that a job is "fundamentally alter[ed]" if an essential function is removed, 29 C.F.R. § Pt. 1630, app. at 397. "Fact-finders must determine whether a function is 'essential' on a case-by-case basis." *LHC Grp., Inc.*, 773 F.3d at 698. The text of the ADA indicates where this inquiry should begin:

No. 22-50135

> For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). Further, the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") list seven non-exhaustive factors to guide the essential-function inquiry:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). "Both the statute and regulations indicate that we must give greatest weight to the employer's judgment," because "it is the only evidence the statute requires us to consider, absent a written job description." *Credeur v. Louisiana Through Off. of Att'y Gen.*, 860 F.3d 785, 792 (5th Cir. 2017). Further, the EEOC states that "the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards . . . nor to require employers to lower such standards." 29 C.F.R. § Pt. 1630, app. at 398.

No. 22-50135

The district court determined that Cuellar failed to demonstrate that he was qualified for employment as a detention officer because he failed to demonstrate that he could perform an essential job function—work 16-hour shifts—either without accommodation or with a reasonable accommodation. Cuellar argues that the 16-hour shift requirement was not an essential function and that the district court erroneously conflated Cuellar's permanent sleep apnea condition with a request for a permanent accommodation. We address each argument in turn.

The ability to work a 16-hour shift is an essential function. Cuellar concedes that the job description contains minimum requirements that specified that detention officers needed "to work overtime as required" and to "work up to sixteen (16) hours within a rolling 24 hour period." Further, Cuellar acknowledges that he worked "up to sixteen hours a day" approximately "three to four times a month." GEO's procedure manual states that "a supervisor can and will require you to work overtime without notice . . . such that you may be required to work a maximum of (2) consecutive eight (8) hour shifts in a day." Additionally, the Collective Bargaining Agreement (CBA) between the employee union and GEO also notes the following:

> The parties agree that the availability to work overtime is an essential function of full-time Officers. The Company will first attempt to utilize Officers who volunteer for overtime. However, based upon business need and/or client directives, Officers may be required to work mandatory overtime. The Company will have the discretion to consider each Officer's extenuating circumstances before requiring any Officer to work overtime.

Cuellar argues that the district court, in considering such evidence, did not give weight to "the employee's opinion about what functions are essential." Because the warden temporarily modified the work schedules of other

employees—including for pregnant employees and employees with back and knee injuries—Cuellar argues that this renders the 16-hour requirement "marginal." But Cuellar's assertion alone is not sufficient; otherwise, "every failure-to-accommodate claim involving essential functions would go to trial because all employees who *request* their employer exempt an essential function *think* they can work without that essential function." *Credeur*, 860 F.3d at 793 (internal quotations and citations omitted) (emphasis in original). There is no evidence in the record that any other employee received a long-term exemption from working 16-hour shifts. There is, however, evidence in the record establishing that overtime work was a necessary part of the detention officer's role—namely, that overtime was required to maintain full staffing at the facility at all times. If an officer called out, or if several detainees were sent to the hospital (requiring two officers to accompany them), GEO would need to ensure that other officers could fill in. And while GEO often had officers volunteer for such overtime, if there were not enough volunteers, other officers would be required to complete that overtime, which could require the officer to complete two back-to-back 8-hour shifts.

Cuellar does not dispute that he was unable to work 16-hour shifts, *i.e.*, he could not perform the essential function without an accommodation. We therefore must next determine if Cuellar could perform the essential function with a reasonable accommodation. Here, Cuellar's only requested accommodation was to be permanently restricted to 12-hour shifts. "The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999). Because one of the essential functions of a detention officer was to work up to a 16-hour shift, if Cuellar cannot perform that duty, he cannot be reasonably accommodated as a matter of law. *Id.* Cuellar's argument—that he was not seeking a "permanent"

No. 22-50135

accommodation—does not change that conclusion. Merely because Cuellar did not request a "permanent" accommodation does not mean that the requested accommodation was not for an indefinite duration. Cuellar's physician noted that Cuellar could not work over 12 hours and that his sleep apnea condition—which was the cause for such a conclusion—would be a lifelong condition.

## B.

Cuellar next argues that he raised a genuine issue of material fact regarding his retaliation claim. An employer violates the Texas Labor Code only if it "retaliates against a person who (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." TEX. LAB. CODE § 21.055. "To establish a prima facie case of retaliation, an employee must show: (1) [he] engaged in an activity protected by the TCHRA, (2) [he] experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." *Texas Dep't of Transportation v. Lara*, 625 S.W.3d 46, 58 (Tex. 2021). "[T]he conduct relied on by the employee must, at a minimum, alert the employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id*. at 59. Here, Cuellar fails to show that he put GEO on notice of a discrimination allegation. Accordingly, Cuellar has failed to allege a prima facie claim for retaliation.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.